GEORGE D. PHILLIPS v. JANE D. PHILLIPS

No. 843DC350

(Filed 19 February 1985)

1. **Divorce and Alimony § 30— Constitutional Law § 24.9—equitable distribution —no right to jury trial**

The trial court in an equitable distribution action erred by submitting to the jury questions about marital property and equitable distribution that were not pure issues of fact. There is no right to a jury trial on an equitable distribution claim, and an "advisory jury" under Rule 39(c) of the North Carolina Rules of Civil Procedure may only try issues of fact. G.S. 50-20, G.S. 50-21, N.C. Constitution Art. I, § 25.

2. **Divorce and Alimony § 30— equitable distribution—evidence and findings of fault improper**

The trial court in an equitable distribution action erred by admitting evidence of fault and making findings as to the relative fault of the parties.

**3. Divorce and Alimony § 30— equitable distribution—assets acquired by loan from corporation—repaid during marriage**

　　In an action for equitable distribution where defendant owned 98% of a corporation prior to the marriage, assets acquired after the marriage by loans from the corporation which were repaid at least in part by income earned during the marriage should not have been treated as immune from equitable distribution. G.S. 50-20(b)(2).

**4. Divorce and Alimony § 30— equitable distribution—condo purchased after separation**

　　In an action for equitable distribution, the court did not err in permitting the C.P.A. who handled plaintiff's corporate accounting to testify concerning the source of funds used to purchase assets; did not err in making findings as to where the defendant's child lived after the parties separated and as to defendant's remarriage, her employment, and her new husband's employment; and did not err in allowing defendant to testify that plaintiff gave her $9,000 to purchase a condominium after the parties separated. Marital funds are not converted into separate property by an exchange for other property after separation. G.S. 50-20(c)(1), G.S. 50-20(c)(4).

APPEAL by defendant from *Ragan, Judge*. Judgment entered 2 December 1983 in District Court, CARTERET County. Heard in the Court of Appeals 29 November 1984.

Plaintiff and defendant were married on 7 November 1970. They separated on 1 June 1981. Plaintiff filed an action for divorce on grounds of adultery on 7 May 1982. Defendant denied the adultery and filed counterclaims for divorce absolute and equitable distribution of the marital property. Plaintiff demanded a jury trial of all issues arising out of the counterclaim.

Plaintiff's action for divorce was dismissed by stipulation on 8 July 1982 and defendant was granted judgment of absolute divorce on 15 July 1982. The counterclaim of equitable distribution was tried before a jury and upon the verdict of the jury the judge entered judgment dated 2 December 1983.

Defendant appeals the judgment.

*Bennett, McConkey & Thompson, by Thomas S. Bennett, for defendant appellant.*

*Wheatly, Wheatly & Nobles, by C. R. Wheatly, Jr., for plaintiff appellee.*

ARNOLD, Judge.

I

[1]  A primary question presented by this appeal is whether the plaintiff had a. right to trial by jury in this action based on the Equitable Distribution Act, G.S. 50-20, -21. The Act does not expressly or implicitly provide for jury trial. Rather, G.S. 50-21(a) states, in pertinent part, ". . . [n]othing in G.S. 50-20 or this section shall restrict or extend the right to trial by jury as provided by the Constitution of North Carolina."

The North Carolina Constitution provides that "[i]n all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable." N.C. Const. art. I, § 25 (formerly § 19).

Chief Justice Parker, in discussing jury trial under Section 19 (now 25), stated that, "[u]nder this constitutional provision, 'trial by jury is only guaranteed where the prerogative existed at common law or by statute at the time the Constitution was adopted.' [citation omitted]." In re Wallace, 267 N.C. 204, 207, 147 S.E. 2d 922, 923 (1966). Accord In re Ferguson, 50 N.C. App. 681, 683, 274 S.E. 2d 879, 880 (1981).

The rights to property provided for by the Equitable Distribution Act did not exist prior to the Act in either statute or the common law. See Sharp, Equitable Distribution of Property in North Carolina: A Preliminary Analysis, 61 N.C. L. Rev. 247, 247-48 (1983). Our research indicates that no right to equitable distribution, or to an action to vindicate that right triable by a jury, existed at the time of the adoption of the North Carolina Constitution. Under the rule of In re Wallace, the plaintiff had no right to a jury trial of the equitable distribution claim.

The plaintiff argues that the trial judge used the jury as an "advisory jury" pursuant to Rule 39(c) of the North Carolina Rules of Civil Procedure. We agree that the trial judge, in his discretion, may use an advisory jury in actions where no right to jury trial exists. Yet, such a jury may only try issues of fact.

Our review of the issues put to the jury in the present case indicates that the trial judge asked the jury to determine ques-

tions, such as what was marital property and what was an equitable distribution of the marital property, that were not pure questions of fact. Indeed, given that the equitable distribution action is, as per its title, "equitable," we are doubtful whether many of the issues to be determined, except for, say, property valuation, are properly determined by a jury, even an advisory one.

While the trial judge in the present case made separate findings, and as to one of the issues, overruled the jury's answer, still we find that he did submit issues to the jury, which he should have decided himself, and apparently relied on the jury's answers in his findings of fact. On remand, the trial judge should identify the marital property, find its net value (with a jury's help, if he wishes), and then, considering the statutory factors, determine whether the property should be equally divided or not, and then if he divides the property unequally, make the proper findings.

## II

[2]   The defendant contends further that the trial judge erred in admitting evidence as to the fault of the parties. We agree. In our recent opinion *Hinton v. Hinton*, 70 N.C. App. 665, 321 S.E. 2d 161 (1984), we held that a trial court's admission and consideration of evidence of marital misconduct, or fault, constituted prejudicial error. On retrial, the court should exclude such evidence pursuant to our directions in *Hinton*.

We agree also with the defendant that the trial court's findings of fact as to the fault of the parties were improper. Finding Number 31, concerning plaintiff's alcohol consumption, violent behavior, and treatment of defendant, and Finding Number 32, describing plaintiff's testimony as to examples of his love and affection for his wife and her failure to respond, concerned the relative fault of the parties and constituted prejudicial error.

## III

[3]   We next deal with defendant's objections to the identification of certain property, including Spooners Creek real estate, a one-third interest in a tract in Swansboro, and an interest in a corporation called Ocean Air, Inc., as separate property. The jury and the trial court apparently approved the plaintiff's argument that this property was separate property because it was acquired through the withdrawal of funds from another piece of separate

property, a closely-held corporation, Pak-a-Sak. Plaintiff's premise is that the whole of his interest in Pak-a-Sak was separate property, because he acquired it prior to his marriage to the defendant, and because its increase in value during marriage was also separate property. Our recent opinions, however, give reason to doubt plaintiff's premise that the whole of Pak-a-Sak's value remained separate property during the course of the marriage.

The Equitable Distribution Act says that "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property[,]" is "marital property," subject to distribution under the Act. G.S. 50-20(b)(1). "Separate property" includes property acquired before marriage, as well as property acquired in exchange for separate property. G.S. 50-20(b)(2). Moreover, "[t]he increase in value of separate property and the income derived from separate property shall be considered separate property." *Id.*

Under the interpretation of G.S. 50-20(b)(2) advocated by plaintiff, if one spouse harvests the increase in value of his or her separate property, say, a business, or corporation, and exchanges it for other assets during the marriage, then those assets are separate property. Under this view, these assets are immune from equitable distribution, even if the spouse who acquired them was only able to do so because his or her spouse devoted time and money to maintaining the household, enabling him or her to engage in profitable business dealings. If this is the case, then equitable distribution simply is no help to the person whose spouse is a businessman or entrepreneur, who brings considerable corporate property into the marriage, and acquires most of the assets used in the marriage by profit-making manipulation of corporate funds.

This same problem exists in the present case. The plaintiff owned 98% of a corporation called "Pak-a-Sak Food Stores, Inc.," the other 2% being owned by his sister. He acquired this interest prior to his marriage to defendant. He borrowed money from the corporation ($110,649.75) after his marriage to defendant to purchase land, the "Spooners Creek Lots." He sold a number of these lots, and combined the proceeds with premarital assets on 1

July 1979 to purchase a Swiss annuity, of value $92,000 on 1 June 1981. Plaintiff also withdrew $35,000 from corporate funds of Pak-a-Sak to purchase land for a Pak-a-Sak store in Swansboro. Plaintiff had a one-third interest in the property. Rents from the property were used to repay the indebtedness created by the loan as well as the upkeep and ad valorem taxes.

Plaintiff again borrowed funds from Pak-a-Sak, purchased two airplanes, and created a corporation, "Ocean Air, Inc.," whose assets were the two airplanes. Plaintiff retained one of the planes for his private use. The other was a rental plane. Ocean Air was created on 28 April 1980 and was in existence on 1 June 1981.

Plaintiff used corporate funds to build a home on one of the Spooners Creek lots. This was the marital home. It was carried as a corporate asset until the IRS objected and by an IRS-corporate agreement required that the property be transferred to plaintiff and declared a dividend. The land was conveyed to plaintiff by deed on 12 December 1980.

Plaintiff claims that the remaining Spooners Creek lots, the Swiss annuity, the one-third interest in the Swansboro store and Ocean Air, Inc., are all separate property because acquired by exchange of separate property, funds borrowed from Pak-a-Sak. The jury and trial court agreed. No attempt was made to identify any assets of Pak-a-Sak as marital property.

Thus, considerable assets were acquired by plaintiff after the parties' marriage by loans from a corporation of which plaintiff was virtually the sole owner. These loans from the corporation were offset or paid back, it appears, by (1) plaintiff's liquidation of personal property acquired prior to marriage, (2) plaintiff's earnings after marriage, and (3) profits, rents, and sales of portions of the acquired properties during the course of the marriage. Thus, although the acquired properties may have initially been acquired by corporate loans, they eventually were paid for at least in part by income earned during the marriage.

In our recent decision of *Wade v. Wade*, slip op. No. 8415DC52 (N.C. App. February 5, 1985), we recognized that in these circumstances the language of G.S. 50-20(b)(2) could produce unfair results, unintended by the Legislature. We thus ruled that:

In light of the remedial nature of the statute and the policies on which it is based, we interpret its provision concerning the classification of the increase in value of separate property as referring only to passive appreciation of separate property, such as that due to inflation, *and not to active appreciation resulting from the contributions, monetary or otherwise, by one or both of the spouses.* This interpretation of the statute is consistent with the approach taken by the overwhelming majority of jurisdictions considering the issue. (Citations omitted.)

*Wade,* slip op. at 9 (emphasis added).

In the present case, then, the trial court should, on retrial, attempt to determine the "active appreciation" of the Pak-a-Sak corporation during the marriage of the parties, that is, the increase in net value due to the contributions in personal effort or money earned during the marriage by either or both of the spouses. In turn, the court should determine the extent to which that increase in net value was siphoned off and used to purchase the assets at issue in this case (the Spooners Creek lots, the Swiss annuity, etc.) and the degree to which those assets increased in value due to plaintiff's or defendant's personal managerial efforts or investment of earnings. Because he controlled a closely-held corporation, plaintiff could shift funds and reap profits without having to draw funds as more highly taxable direct income. We do not believe that merely by covering his transactions with the corporate veil plaintiff can claim that any assets acquired thereby are wholly insulated from equitable distribution. As we observed in *Wade*:

> To hold otherwise would create incentive for a sophisticated spouse to divert marital funds into improving his or her separate property thereby depriving the other spouse of any possible return of the marital investment upon the dissolution of the marriage. *See Hall v. Hall,* 462 A. 2d 1179 (Maine 1983).

*Wade,* slip op. at 10.

On retrial the court should include evidence which would be useful in valuing the Pak-a-Sak corporation, such as Exhibit 39, which it excluded below. Exhibit 39 contained plaintiff's response

to interrogatories concerning gross sales, cost of goods sold, profit, operating expenses, and income and retained earnings of Pak-a-Sak Food Stores, Inc., for the years 1976-81. The trial judge also should include defendant's testimony as to the stock ownership in Ocean Air, Inc., and the airplanes which were transferred to the corporation.

## IV

We now deal briefly with defendant's other contentions:

[4]　(IV) The defendant contends that the court erred in allowing defendant to testify that plaintiff gave defendant $9,000 to purchase a condominium, because this occurred after the separation of the parties. Simply because the transaction occurred after the parties' separation does not mean that the condominium is not marital property. If the funds plaintiff gave defendant were marital funds, then their exchange for other property after separation does not convert them into separate property. On retrial, the court should consider the source of the $9,000 and whether it can be classified as a marital asset.

(VI), (VII) The court did not err in permitting Thomas Horne to testify as to the source of funds used to purchase the Swiss annuity and Spooners Creek lots, and as to the sale and resale of securities sold and disposed of in plaintiff's investment account. Mr. Horne is a certified public accountant, who had handled accounting for Pak-a-Sak and plaintiff since the early sixties, and was qualified to testify as to these matters. The weight to be given his testimony was for the trial judge to determine.

(VIII) The court did not err in allowing plaintiff's Exhibits 1-4. Plaintiff's objection goes to the weight to be given the evidence, which the trial court, in his discretion may determine.

Finding of Fact Number 23, concerning where the defendant's child lived after the parties separated and now lives, was not improperly made because it went to one of the statutory factors to be considered by the trial court. *See* G.S. 50-20(c)(4).

Finding of Fact 24, concerning remarriage of the defendant, her present employment and the present employment of her new husband, also went to one of the statutory factors, *see* G.S. 50-20(c)(1), and was not improperly made.

Given our rulings above, defendant's other assignments of error do not merit our attention at this time.

Reversed and remanded.

Judges WELLS and BECTON concur.