EDWARD W. McLEOD, III v. LOUISA FARMER McLEOD

Nos. 8412DC647, 8412DC755, 8412DC766

(Filed 16 April 1985)

1. **Divorce and Alimony § 30— equitable distribution—inherited stock—active appreciation in value—marital property**

    Where plaintiff inherited during the marriage, after an exchange with his sister, 31.47 shares of a closely-held corporation, giving him an ownership in-

McLeod v. McLeod

terest of approximately 30%, that interest qualifies as separate property under G.S. 50-20(b)(2). However, any increase in the value of the stock due to active rather than passive appreciation constitutes marital property subject to equitable distribution.

2. **Divorce and Alimony § 30— equitable distribution—inherited stock in closely-held corporation—active appreciation—marital property—necessary findings**

In determining the value of stock owned by plaintiff husband in a closely-held corporation which is marital property subject to equitable distribution, the trial court must make findings as to: (1) the value of plaintiff husband's minority interest in the corporation at the time he inherited stock in the corporation during the marriage; (2) the value of plaintiff's controlling interest in the corporation, gained when the corporation redeemed as treasury stock all outstanding shares except those owned by plaintiff, at the date of separation of the parties; (3) the difference between the two; and (4) the proportion of that difference that is due to active appreciation, i.e., attributable to funds, talent, or labor that are assets of the marital community. The resulting amount is marital property subject to equitable distribution.

3. **Divorce and Alimony § 30— equitable distribution—stock in closely-held corporation—redemption of other shares as treasury stock—active appreciation—marital property**

When plaintiff's minority interest in a closely-held corporation inherited during the marriage became the controlling stock of the corporation upon the corporation's redemption of all outstanding shares except those owned by plaintiff, the corresponding increase in value of plaintiff's shares resulted from active appreciation and constituted marital property subject to equitable distribution.

4. **Divorce and Alimony § 30— equitable distribution—closely-held corporation—guaranty of note—no creation of marital interest**

Defendant wife's signature guaranteeing a closely-held corporation's note given to obtain funds to redeem as treasury stock all outstanding shares except those owned by plaintiff husband did not itself create a marital interest in the ownership of the corporation.

5. **Divorce and Alimony § 30— equitable distribution—tenancy by the entireties—consideration from separate property—rebuttable presumption of gift**

Where a spouse furnishing consideration from separate property causes property to be conveyed to the other spouse in the form of tenancy by the entireties, a presumption of a gift of separate property to the marital estate arises, which is rebuttable by clear, cogent, and convincing evidence.

6. **Divorce and Alimony § 30— equitable distribution—camper/trailer—separate and marital interest—source of funds formula**

A camper/trailer financed and improved with funds from the sale of plaintiff husband's separate property (corporate stock) and from bonuses plaintiff received from a closely-held corporation partakes of both separate and marital interests and should be apportioned according to the formula for source of funds-active/passive appreciation (or depreciation) unless the court finds that

the parties have, by agreement meeting the requirements of G.S. 50-20(d), opted out of an equitable distribution with regard to the camper/trailer.

APPEALS by plaintiff and defendant from *Cherry, Judge.* Judgment entered 1 February 1984 in District Court, CUMBERLAND County. Heard in the Court of Appeals 15 February 1985.

The parties appeal from a judgment distributing marital property pursuant to the Equitable Distribution Act, G.S. 50-20 and 50-21.

*Charles S. Fox for plaintiff appellant.*

*Jerome B. Clark, Jr., for defendant appellant.*

WHICHARD, Judge.

Plaintiff and defendant were married in 1963 and divorced in 1984. Two children were born of the marriage.

In 1967 the parties purchased a house and lot which they held as tenants by the entirety. The court found that defendant contributed $8,000 toward the down payment and plaintiff contributed $2,000. The parties assumed a mortgage for the balance of approximately $13,000. In 1980 the parties deeded this property to defendant's parents. In exchange defendant's parents conveyed to them a house and lot located on Skye Drive in Fayetteville. The parties held the Skye Drive property, worth $126,000 at the date of separation, as tenants by the entirety. The court concluded that "[d]efendant owns an eighty (80%) percent interest in said house . . . and that the remaining twenty (20%) percent is marital property." The court then awarded the Skye Drive house and lot to defendant, adjudging it to be her "sole and separate property." The exact basis for the award is not clear from the judgment or the record. Nor is it clear whether the court was using the word "separate" as it is statutorily defined at G.S. 50-20(b)(2). Plaintiff appeals from this award.

In 1970 plaintiff inherited 61.23 shares of Edmac Trucking Company stock and 18.42 shares of Edmac Truck Sales and Service, Inc. (the corporation) stock. Before the stock was placed in plaintiff's name he exchanged the shares in Trucking Company with his sister for 13.05 shares of the corporation, giving him

McLeod v. McLeod

31.47 shares of the corporation and an approximate ownership interest of thirty percent.

In 1974 plaintiff, as president of the corporation, borrowed $225,000 on a note guaranteed by the parties. With these funds, plus $21,743.45 in corporate funds, the corporation redeemed as treasury stock all outstanding and issued shares except those owned by plaintiff. Plaintiff thus became sole owner of the corporation, from which he drew his primary income during the marriage. The court concluded "[t]hat Edmac Truck Sales & Service, Inc. is the sole and separate property of the Plaintiff and is not marital property." It awarded him the corporation. Defendant appeals.

In 1978 plaintiff purchased a camper with dividends paid by inherited property — stock in Nedco Sales and Trucking (Nedco) — and funds from a bonus from the corporation. An addition to the camper was financed the same way. The court concluded the camper was marital property to be sold and the proceeds divided equally. Plaintiff appeals.

For reasons hereinafter set forth, we vacate and remand.

I.

In an action for equitable distribution first the court must classify property as either marital or separate as defined in G.S. 50-20(b)(1) and G.S. 50-20(b)(2). *Loeb v. Loeb*, 72 N.C. App. 205, 208-09, 324 S.E. 2d 33, 37 (1985). Next it must divide the marital property equally, unless it determines that an equal division is not equitable. G.S. 50-20(c); *White v. White*, 312 N.C. 770, 776, 324 S.E. 2d 829, 832 (1985). Separate property is not subject to equitable distribution. G.S. 50-20(c); *Loeb*, 72 N.C. App. at 209, 324 S.E. 2d at 37.

" 'Marital property' means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties, and presently owned, except property determined to be separate property . . . ." G.S. 50-20(b)(1). " 'Separate property' means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage." G.S. 50-20(b)(2). "Property acquired in exchange for separate property" is separate property,

as is income derived from separate property and increases in value of separate property. *Id.*

The key term in both definitions is "acquired." In *Wade v. Wade*, 72 N.C. App. 372, 325 S.E. 2d 260 (1985), this Court adopted the source of funds rule, *id.* at 381-82, 325 S.E. 2d at 269, by which property is "acquired" as it is paid for, so that it may include both marital and separate ownership interests. Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247, 255 (1983); Krauskopf, *Marital Property at Marriage Dissolution*, 43 Mo. L. Rev. 157, 180 (1978). Under the source of funds rule acquisition is an on-going process. *Harper v. Harper*, 448 A. 2d 916, 929 (Md. App. 1982). *See also Tibbetts v. Tibbetts*, 406 A. 2d 70, 75-76 (Me. 1979). It does not depend upon inception of title but upon monetary or other contributions made by one or both of the parties. In adopting this rule by which to characterize property as marital or separate or some combination, this Court recognized "that a dynamic rather than static interpretation of the term 'acquired' as used in G.S. 50-20(b)(1)" best serves to implement the remedial intent of the statute. *Wade*, 72 N.C. App. at 380, 325 S.E. 2d at 268.

Using a source of funds analysis, this Court drew a distinction in *Wade* between increases in value of separate property due to passive appreciation, such as by inflation or governmental action, *see e.g. Hoffmann v. Hoffmann*, 676 S.W. 2d 817 (Mo. banc 1984) (increased value of separate property due to Clean Water Act of 1977, 33 U.S.C. Sec. 1251), and increases due to active appreciation, such as by financial or managerial contributions from one or both of the spouses. *Wade*, 72 N.C. App. at 379, 325 S.E. 2d at 268; Sharp, *supra*, at 260-61. It interpreted G.S. 50-20(b)(2), which classifies increase in value of separate property as separate property, as referring only to increase due to passive appreciation, which does not deplete the marital estate. *Wade*, 72 N.C. App. at 379, 325 S.E. 2d at 268. It held that increase in value of separate property due to active appreciation, which otherwise would have augmented the marital estate, is marital property. *Id.* Thus the marital partnership shares in increases in value of property it has proportionately "acquired" in its own right. Sharp, *supra*, at 257.

## II.

With the foregoing as background, we address the award of the corporation to plaintiff as his "sole and separate property."

The status of closely-held corporate stock brought into a marriage by one spouse—rather than inherited during the marriage as here—has recently been determined in *Phillips v. Phillips*, 73 N.C. App. 68, 326 S.E. 2d 57 (1985). There plaintiff owned 98 per cent of a corporation prior to his marriage to defendant. He accumulated considerable assets after the marriage by profit-making manipulation of corporate funds. Plaintiff contended that because he owned the corporation prior to marriage, it and assets purchased by withdrawal of corporate funds were separate property. In rejecting plaintiff's contentions this Court noted that under this view increases in value of separate property would be immune from equitable distribution even if the marriage partner managing the separate property "was able to do so because his or her spouse devoted time and money to maintaining the household, enabling him or her to engage in profitable business dealings." *Phillips*, 73 N.C. App. at 72, 326 S.E. 2d at 60. If this were the case, the Court continued, "the equitable distribution [would be] no help to the person whose spouse is a business[person] or entrepreneur [and] who brings considerable corporate property into the marriage . . . ." *Id*. "We do not believe," the Court concluded, "that merely by covering his transactions with the corporate veil plaintiff can claim that any assets acquired thereby are wholly insulated from equitable distribution." *Id*. at 74, 326 S.E. 2d at 61.

The *Phillips* court found, therefore, that the active appreciation of the closely-held corporation during marriage and before separation was marital property and that assets acquired by siphoning funds from the corporation could be marital property if such assets were a product of the active appreciation of the corporation and/or actively appreciated during the marriage.[1] The

---

1. We do not intend by this analysis to draw a bright line whereby appreciation in passive investments such as bank accounts or securities, not actively increased by the skill and labor of the spouse who inherited or brought them to the marriage, but which the parties were able to preserve intact only because they spent marital funds, invariably remains separate property.

New York, which has had more opportunity to construe its equitable distribution statute than we have ours, notes the following in the 1984 Supp. to the Consolidated Laws of New York Annotated:

Court thus followed the analysis of *Wade*, 72 N.C. App. 372, 325 S.E. 2d 260, reenforcing the principle that the sophisticated spouse who expends money and effort during the marriage to improve his or her separate property should not be insulated from equitable distribution when the marriage breaks down. *See Hall v. Hall*, 462 A. 2d 1179, 1181-82 (Me. 1983). *See also Roffman v. Roffman*, 124 Misc. 2d 636, 476 N.Y.S. 2d 713 (1983) (term "separate property" not applicable to growth of a business that was the primary economic foundation of a lengthy marriage).

We find *Phillips* controlling and rely upon its reasoning to determine the status of closely-held corporate stock inherited by one of the parties during the marriage here.

[1, 2] In 1970 plaintiff inherited, after an exchange with his sister, 31.47 shares of Edmac corporation, giving him an ownership interest of approximately 30 per cent. That initial interest qualifies as separate property under the statute. G.S. 50-20(b)(2). Any increase in its value due to active appreciation is marital property. *Wade*, 72 N.C. App. at 379, 325 S.E. 2d at 268; *Phillips*, 73 N.C. App. at 74, 326 S.E. 2d at 60-61. Thus, on remand, the court should make findings as to: (1) the value of plaintiff's minority interest at the time of inheritance, *see, e.g.* 2 McCahey, *Valuation and Distribution of Marital Property*, 22-5 to 22-129 (1984); (2) the value of plaintiff's controlling interest at the date of separation (while no finding was made, uncontradicted evidence shows

---

The active/passive management distinction is certainly useful in avoiding the harsh results that would flow from viewing a business that was the economic cornerstone of a long-term marriage as separate property . . . .

. . . .

On the other hand, strict reliance upon an active/passive management distinction has it shortcomings as well. For example, assume that one spouse has a valuable interest in government securities at the time of marriage. Assume further that the other spouse is employed and generates such income so as to not require the invasion of the capital and therefore, the securities are periodically "rolled over" with interest being added to the original principal. Under a strict reading . . . those "rollovers" would be property in exchange for separate property. To hold that because the investment was "passive," indirect spousal contributions of the other spouse as wage earner [are to be unreimbursed upon dissolution of the marriage] would seem unfair.

N.Y. Domestic Relations Law Sec. 236 (McKinney 1984), 1984 Practice Commentary at 87.

that value to be $400,000); (3) the difference between the two; and (4) the proportion of that difference that is due to active appreciation, i.e., attributable to funds, talent, or labor that are assets of the marital community. The resulting amount is marital property subject to equitable distribution.

[3] As guidance to the trial court, we note as a specific example of active appreciation that in 1974 the value of plaintiff's interest in the corporation increased due to a redemption by the corporation of all outstanding shares, whereby plaintiff became the sole owner. The minority interest plaintiff had inherited became the controlling stock of the corporation with a corresponding increase in value. Plaintiff contends that "this increase did not change the status of his interest in the Corporation as separate property." Under the source of funds analysis, however, the redemption of the outstanding shares by the corporation as treasury stock resulted in active appreciation of plaintiff's stock. The redemption was a business decision from which plaintiff as president derived substantial economic advantage which, in terms of our statute and cases, is property acquired during the marriage.

To suggest, as plaintiff does, that only his salary constitutes marital property ignores the reality of a closely-held corporation wherein persons in control have broad discretion in allocating salary, dividends, and retained earnings. *See Donahue v. Rodd Electrotype Co. of New England, Inc.,* 328 N.E. 2d 505, 511 (Mass. 1975) (close corporation characterized by (1) small number of shareholders, (2) no ready market for shares, and (3) substantial majority stockholder participation). "A decision which is entirely sound from the standpoint of corporate policy, still might operate to the disadvantage of a shareholder's spouse so as to deprive the spouse of a share of the fruits of the shareholder's labor." *Hoffmann,* 676 S.W. 2d at 830.

[4] In applying the active/passive dichotomy we reject defendant's contention that her signature guaranteeing the corporation's $225,000 debt of itself created a marital interest. We note, however, that where a spouse puts him or herself at risk guaranteeing repayment of a loan whose proceeds do not partake of marital property interests, courts have found the community entitled to an equitable lien for its contribution to separate property. *See In re Marriage of Bepple,* 683 P. 2d 1131 (Wash. App.

1984) (continued operation of the corporation due at least in part to the community guaranty of the loan).

Finally, we note that the approach we have adopted allows the court, given adequate proof, to treat a portion of the increased value of shares in a closely-held corporation as marital property even though the shares were inherited. "Any other approach would exalt substance over form and would greatly magnify the importance of the choice of business association." *Hoffmann*, 676 S.W. 2d at 829.

### III.

We next address the award of the marital home to defendant as her "sole and separate property." This property was held by the parties as tenants by the entirety, a form of co-ownership with a right of survivorship created when real property is conveyed to a husband and wife and the unities of time, title, interest, and possession are observed. *Combs v. Combs*, 273 N.C. 462, 465, 160 S.E. 2d 308, 311 (1968). *See also Davis v. Bass*, 188 N.C. 200, 124 S.E. 566 (1924); Lee, *Tenancy by the Entirety in North Carolina*, 41 N.C. L. Rev. 67 (1962). The estate rests upon the doctrine of unity of the person and takes its origin from the common law where husband and wife were regarded as one. *Combs*, 273 N.C. at 465, 160 S.E. 2d at 311. It has not been abrogated by statute. *Id.*; Porter, *Tenancy by the Entirety in North Carolina: An Idea Whose Time Has Gone?* 58 N.C. L. Rev. 997, 997 (1980) ("Today this anomaly still exists in North Carolina much as it did at common law.").

The nature of a tenancy by the entirety does not insulate it from legislative change, however. *Sawyer v. Sawyer*, 54 N.C. App. 141, 143, 282 S.E. 2d 527, 528 (1981). The rights of tenants by the entirety depend upon the continuance of the marital status. *Id.* "An absolute divorce destroys the unity of person and thereby converts [the] estate . . . into a tenancy in common, wherein the parties hold undivided one-half interests." *Id.*

> When a divorce occurs, the marital relation is altered, and the rights of the severed parties in the property are altered as well . . . . This is not because of any retroactive effect of the decree of divorce on the original grant to the spouses, but because the creation of the tenancy by the entirety was dependent upon their marriage . . . . *Id.*

McLeod v. McLeod

Various judicial presumptions have developed affecting the entireties estate, Porter, *supra*, at 1000, notably the gift presumption made applicable to both spouses in *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982). Under that rule our courts employ a presumption of gift when either spouse is the payor of property taken in the name of the other. *Mims*, 305 N.C. at 50, 286 S.E. 2d at 786. (Prior to *Mims* when the wife supplied the consideration the courts presumed a resulting trust in her favor.) "The extent of the gift is determined by the degree to which the title reflects an interest in the grantee disproportionate to the consideration supplied by the grantee." *Id.* at 53, 286 S.E. 2d at 787. The presumption of gift is rebuttable by clear, cogent, and convincing evidence. *Id.*

The Court in *Mims* confined its decision to cases in which the Equitable Distribution Act is not applicable, stating, "We do not purport here definitively to construe this new statute." *Id.* Clearly, however, the Court was motivated in part by the same concerns that impelled our legislature to enact the equitable distribution statute. *See Mims* at 51-53 and at n. 9, 286 S.E. 2d at 786-88 and at n. 9. Thus, we are guided by *Mims* in determining the disposition of the entireties property in this case.

Here the parties each contributed separate property—the wife $8,000, the husband $2,000—to make a down payment on a home costing $23,000. They made mortgage payments during the marriage. Due to home improvements, inflation, and an exchange of the original home with defendant's parents for one worth considerably more, at the time of separation the parties owned as tenants by the entirety appreciated property with a fair market value of $126,000.

Were this case before us in a different posture, rather than for classification of property in an action for equitable distribution, we would hold pursuant to *Mims* that each party presumably had made a gift to the other of that separate consideration that furnished the $10,000 down payment on their first home. This rule, the Court stated in *Mims*, "recognizes that such transfers are normally motivated by love and affection and the desire to make a gift." *Id.* at 53, 286 S.E. 2d at 788. We do not believe the rule should differ appreciably where the parties have applied for equitable distribution.

The source of funds approach—which this Court adopted, *Wade*, 72 N.C. App. at 381-82, 325 S.E. 2d at 269, for classifying other property—would dictate that each party retain as separate property the amount he or she contributed to the down payment, plus the increase on that investment due to passive appreciation; increases on that investment of separate property due to active appreciation, and amounts contributed by the marital unit plus increases on those amounts, would be marital property subject to equitable distribution.

[5] We believe the better rule, which we herein adopt, is that where a spouse furnishing consideration from separate property causes property to be conveyed to the other spouse in the form of tenancy by the entireties, a presumption of a gift of separate property to the marital estate arises, which is rebuttable by clear, cogent, and convincing evidence. *Accord Loeb*, 72 N.C. App. at 211, 324 S.E. 2d at 39 (Joint title creates rebuttable presumption of marital property which may be overcome by clear, cogent, and convincing evidence of a *third party donor's* contrary intent.). We believe this rule is consonant with the interspousal gift provision of our statute, with the separate property provision, and with the Supreme Court's enunciation of the common law in *Mims*, 305 N.C. 41, 286 S.E. 2d 779.

We note as well that with the exception of Maryland, *Grant v. Zich*, 477 A. 2d 1163 (Md. 1984), all other jurisdictions that have ruled on the question—including Colorado, Illinois, Iowa, Maine, Missouri, New Jersey, Wisconsin, and the District of Columbia—have determined that a presumption of gift to the marital estate arises from placing title to property in a tenancy by the entirety. *See, e.g., In re Marriage of Moncrief*, 535 P. 2d 1137, 1138 (Colo. 1975); *In re Marriage of Rogers*, 422 N.E. 2d 635, 638 (Ill. 1981); *In re Marriage of Butler*, 346 N.W. 2d 45, 47 (Iowa App. 1984); *Carter v. Carter*, 419 A. 2d 1018, 1022 (Me. 1980); *Conrad v. Bowers*, 533 S.W. 2d 614, 624 (Mo. App. 1975); *Pascarella v. Pascarella*, 398 A. 2d 921, 924 (N.J. Super. 1979); *Bonnell v. Bonnell*, 344 N.W. 2d 123, 126-27 (Wis. 1984); *Turpin v. Turpin*, 403 A. 2d 1144, 1146 (D.C. App. 1979) (property titled jointly, for whatever reason, no longer separate).

Of these states Maine has interpreted its equitable distribution statute most nearly as we have ours, adopting the source of

funds theory for the classification of property other than en-
tireties property. Their statute was enacted, like ours, on the
belief that existing common law rules were inequitable. *Carter*,
419 A. 2d at 1020; *White*, 312 N.C. at 774, 324 S.E. 2d at 831. To
remedy the situation the Maine legislature adopted the concept of
"marital property," intended to correspond to "partnership prop-
erty" in a business entity or "community property" in a communi-
ty property state. *Carter*, 419 A. 2d at 1020-21. "That some
couples chose to put property in joint tenancy," the *Carter* court
said, "even though one spouse had paid all of the purchase price
from separate funds[,] represented a recognition of the partner-
ship nature of marriage by those couples before the law itself
adopted that theory." *Id.* at 1021. We find this reasoning per-
suasive.

In addition, our ruling is consonant with G.S. 50-20(b)(2), the
interspousal gift provision. That provision creates a presumption
that gifts between spouses are marital property. *Sharp, supra,* at
263-64. "[P]roperty acquired by gift from the other spouse during
the course of the marriage shall be considered separate property
*only if such an intention is stated in the conveyance.*" (Emphasis
added.) G.S. 50-20(b)(2). *Accord, In re Marriage of Rogers*, 422 N.E.
2d 635, 638 (Ill. 1981) ("It may be anachronistic now to refer to an
intent to convey a gift to the other spouse, but it is not improper
to refer to an intent to convey a gift to the marriage."); *Conrad v.
Bowers*, 533 S.W. 2d 614, 622 (Mo. App. 1975) (presumption of gift
to marital estate overcome only by showing property acquired in
exchange for separate property *and* transfer not intended as gift).
Were the rule otherwise, "the nonsensical result would be that
only gifts *from* marital property . . . could be marital property, a
result clearly not intended under the exchange provision . . . ."
*Sharp, supra,* at 267.

Our ruling is also consonant with the separate property pro-
vision. Prior to *Mims* that provision read, "Property acquired in
exchange for separate property shall remain separate property
regardless of whether the title is in the name of the husband or
wife or both." G.S. 50-20(b)(2) (1981). Given that language, the
*Mims* court wrote,

It does appear . . . that in the context of a divorce and the
"equitable distribution" of all "marital property" the

legislature has opted for a rule that where land or personalty is purchased with the "separate property" of either spouse, it remains the "separate property" of that spouse regardless of how the title is made.

*Mims*, 305 N.C. at 53, 286 S.E. 2d at 787. In apparent response to this reading of the statute as it was written, the legislature amended the separate property provision to state that property acquired in exchange for separate property shall remain so regardless of title "and shall not be considered to be marital property *unless a contrary intention is expressly stated in the conveyance*." (Emphasis added.) G.S. 50-20(b)(2) (1983 Cum. Supp.).

Thus the legislature appears to have availed itself of the reasoning in *Mims* whereby when spouses title their real property without regard to the source of the consideration a gift will be presumed. When property titled by the entireties is acquired in exchange for separate property the conveyance itself indicates the "contrary intention" to preserving separate property required by the statute. *Accord In re Marriage of Lucas*, 614 P. 2d 285, 289 (Cal. 1980) ("The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest.").

We do not believe this interpretation conflicts with this Court's previous rejection of the doctrine of transmutation as a means to classify property. *Wade*, 72 N.C. App. at 381, 325 S.E. 2d at 269. Under that doctrine a married person may convert his or her separate property into marital property by conduct evidencing intent, such as the owner's oral statements, *Woods v. Security First National Bank of Los Angeles*, 299 P. 2d 657 (Cal. 1956), a documentary transaction, *Conrad v. Bowers*, 533 S.W. 2d 614 (Mo. App. 1975), or commingling of funds or assets, *Jaeger v. Jaeger*, 547 S.W. 2d 207 (Mo. App. 1977). As noted in one commentary, "[T]ransmutation is dangerously easy." Reppy & DeFuniak, *Community Property in the United States* 421 (1975), cited in Krauskopf, *Marital Property at Marriage Dissolution*, 43 Mo. L. Rev. 157, 192 n. 203 (1978). Here, however, only a titling of property as tenants by the entirety supplies the specific intent necessary to transform separate property into marital. G.S. 50-20(b)(2). Commingling of funds, the hallmark of transmutation, is irrelevant in that consideration for entireties property may

consist solely of separate property of one spouse, which under the gift presumption presumably becomes marital property.

The marital gift presumption follows naturally from this Court's previous decisions in *Loeb*, 72 N.C. App. 205, 324 S.E. 2d 33 and *Wade*, 72 N.C. App. 372, 325 S.E. 2d 260. In *Loeb* the Court held that property acquired during the marriage is presumably marital, rebuttable by clear, cogent, and convincing evidence that the property comes within the separate property provision. *Loeb*, 72 N.C. App. at 210, 214, 324 S.E. 2d at 38, 40. The language of the statute suggests this presumption in that it first defines marital property as "*all* . . . property acquired by either or both spouses, during . . . the marriage," (emphasis supplied), and only after so defining it, limits the class by stating, "*except* property determined to be separate." (Emphasis supplied.) G.S. 50-20(b)(1). In *Wade*, 72 N.C. App. at 381, 325 S.E. 2d at 269, the Court recognized that the marital property presumption is not explicitly adopted by the legislature but is, rather, a judicial gloss on the language of the statute. Moreover, once the presumption is overcome and property is shown to be separate—having been "acquired by a spouse before marriage or . . . by bequest, devise, descent, or gift [from a third party] during . . . marriage," G.S. 50-20(b)(2)—the Court discerned a clear legislative intent that property so acquired be returned to that spouse upon divorce, *Wade*, 72 N.C. App. at 381, 325 S.E. 2d at 269. Herein and in the cases discussed above, this Court has refined the meaning of "acquired" in the context of the Equitable Distribution Act.

Further, a presumption of gift to the marital estate of entireties property is consistent with a public policy to further the intent of both parties as evidenced by their mutual agreement. When one party titles property jointly it is reasonable that the other party expects it to be an addition to marital property. To protect those expectations the property should be classified as marital unless the donor's contrary intent was clearly brought to the attention of the donee. Krauskopf, *supra*, at 191.

With regard to the down payment on the home, neither party presented evidence of an intention that the separate property so used remain separate. We therefore do not reach whether the presumption of gift from separate property to the marital estate

is rebutted.[2] Should the issue arise on remand as to funds comprising the down payment, we note that in an analogous situation the Court in *Mims* stated, "If . . . [a spouse] can prove at trial by clear, cogent and convincing evidence that he [or she] did not intend to make a gift of an entirety interest in the property . . ., then he [or she] will have rebutted the presumption . . . ." *Mims*, 305 N.C. at 57-58, 286 S.E. 2d at 790. Upon rebuttal, the property is then classified according to the source of funds rule, *supra*.

## IV.

[6] The court concluded that "the camper/trailer is marital property and should be sold and the proceeds divided equally between the parties." From the record we have determined that this property was financed and improved with funds from the sale of plaintiff's separate property (Nedco stock) and from bonuses plaintiff received from the corporation. It thus partakes of both separate and marital interests and on remand should be apportioned according to the formula for source of funds-active/passive appreciation (or depreciation) previously discussed. We note that defendant contends, and plaintiff did not dispute in oral argument, that she has paid plaintiff $10,000 for a transfer of title to the vehicle and an assignment of the leasehold on which it stands. Parties may, by agreement, opt out of an equitable distribution proceeding. G.S. 50-20(d). Therefore, if on remand the court determines that this agreement complies with G.S. 52-10 and 52-10.1 as provided by G.S. 50-20(d), it is binding on the parties.

## V.

In conclusion, we hold:

(1) The corporation awarded to plaintiff as his sole and separate property partakes of separate and marital interests the value of which is to be determined on remand.

---

2. This decision thus leaves open what will be a showing by clear and convincing evidence that entireties titling was not intended as a gift to the marital estate. For cases where the evidence was held insufficient see *Goldstein v. Goldstein*, 310 So. 2d 361 (Fla. D.C. App. 1975) (Spouse who places separate securities in joint brokerage account to prevent distribution in bankruptcy may not claim separate property interest for divorce purposes.); *In re Marriage of Moncrief*, 535 P. 2d 1137 (Colo. 1975) (Parties' explanation that title placed in joint tenancy to avoid inheritance tax does not overcome gift presumption; rather it expresses reason why gift was made.). *See also* Krauskopf, *supra*, at 191.

(2) The Skye Drive home held as tenants by the entireties is presumed marital property unless on remand the court determines upon clear, cogent, and convincing evidence that the parties intended not to make a gift to the marital estate of separate funds used to purchase the property. In that case, unlikely on the record here, the property would partake of both separate and marital interests.

(3) The camper/trailer partakes of both separate and marital interests the value of which is to be determined on remand unless the court finds that the parties have met the requirements of G.S. 50-20(d).

(4) All property determined to be marital is then to be distributed equitably.

The judgment is vacated and the cause remanded for further proceedings consistent with this opinion.

Judges WELLS and BECTON concur.