## CIRCUIT COURT OF CAMPBELL COUNTY

Helen Cash Booth

v.

Wayne Bush Booth

### August 9, 1985

By JUDGE J. SAMUEL JOHNSTON, JR.

I have completed review of the file and issue this letter as my opinion in the case. Concomitant with my review of the file, I have studied the submitted briefs and considered the cited statutes and cases. Please remember that this letter contains my opinion of what the law in Virginia is, or ought to be, as there is no case in Virginia yet reported which would give us definitive guidance in determining the issues. I will address each issue and each portion of Section 20-107.3 individually and apologize if it is done in a desultory manner.

### I. Bat Masonry [Corporation]

The status of Bat Masonry, whether separate or marital property, was the most complex question presented to me, along with the proper or correct method of its valuation. It, of course, was absolutely necessary that we value Bat Masonry no matter what the ultimate decision was concerning its legal status. Both experts, Lou Einwick and Walter Stosch, who testified on the valuation issue were impressive in their knowledge of the subject, their methods of evaluation, and their presentation of the same. It is extremely difficult to state that one valuation is correct to the exclusion of the other as there are so many variables to apply and theories to implement. Since both appraisals have probative value, I have considered both in finding that Bat Masonry is worth in the range

of $500,000.00. This is not done as a Solomonesque attempt to "halve the baby," but I do not believe that Bat Masonry is susceptible to precise evaluation.

It is my considered opinion that Bat Masonry was, and remains, the separate property of Wayne Booth. I find this to be for several reasons.

As the record will reflect, I reject employment of the active/passive test, which apparently is the law in North Carolina and a majority of jurisdictions which have considered the issue. The holdings in *McLeod* v. *McLeod*, 327 S.E.2d 910 (1985), and *Wade* v. *Wade*, 325 S.E.2d 260 (1985), are patent examples of courts usurping the legislative function where there is no clear indication of legislative intent. This is contrary to what I view as my duty and unnecessary in view of what I perceive the clear legislative intent was in Virginia. Judicial interpretation of a statute does not permit a court to sit as a legislative body, and I reject the call of wife's counsel to be "dynamic" and "bold" when I view my mandate to be one of fairness and equity in my decision making and application of the law.

The possibility of inequity that Judge Sheffield complains of is correctable under the clear dictates of Section 20-107.3, et seq., and I am given great latitude and stern direction in equitably dividing property. This decision should not be interpreted as allowing a sophisticated spouse to insulate his or her separate property from equitable distribution merely by his or her efforts to increase the worth of the property. But to rule otherwise in this case would be contrary to the legislative intent in Virginia (see report of the Joint Subcommittee studying Virginia Code Section 20-107 to the Governor and to the General Assembly of Virginia [House Document 21]).

One can envision the horrors of employing an active/passive test as in *Wade* and *McLeod*. If a spouse possessed stock as separate property before a marriage and it increased in value during the marriage, it could be viewed as marital or separate depending on a court's definition of active and passive. Would the aforementioned stock become marital if the non-owner spouse urged the

owner spouse to not sell the stock or gave the owner spouse a tip that led to a sale or trade of the stock that increased the value thereof? Conversely, would it not punish a non-owner spouse to require in all cases a designation of property as separate where an increase in valuation was not attributable to the efforts of either party? I believe the better test, indeed the only one, in view of the legislative mandate, is one styled by me as "intention of the parties." This test, with the broad directive and power given to the court by Section 20-107.3, allows me to look at how the property was viewed and treated by the parties during the course of the marriage and not necessitate an artificial test such as active/passive.

Mindful of the test to be employed, I have no trouble finding that Bat Masonry was and is separate property. Both parties agree that Bat Masonry was the separate property of Wayne Booth at the time of their marriage on January 18, 1964. The burden of proof lies with the wife to show that Bat Masonry has been transformed or transmuted into marital property. She has not sustained that burden.

It is my opinion that separate property can be converted or transmuted into marital property, and this is to be decided by the statements and actions of the parties. There were no statements attributed to Mr. Booth which indicated he felt that Bat Masonry was anything other than separate property. His actions were indicative of the same. He was the founder of the corporation, owned all of the stock and has always been the sole life-blood of Bat Masonry. Nor was there any credible testimony to show that the actions or intentions of Mrs. Booth were such that Bat Masonry was or should be deemed marital property. The only deeds of Mrs. Booth attributable to Bat Masonry's well-being was that she loaned the company some $12,000.00 to $15,000.00 and was not repaid, she picked out some color schemes for some apartments built by Bat Masonry, and once signed some checks in Mr. Booth's absence and at his direction. This was done over a period of twenty-two years and in no way approaches transmuting or converting Bat Masonry from separate to marital. Mrs. Booth's assertion that she was "general office manager," is totally unsupported by the evidence and is utter folly. However, I do deem her efforts as demonstrating both monetary and nonmonetary contributions by the wife which

must be considered, as required by Section 20-107.3(E)(1) of the Code of Virginia, 1950, as amended.

I am not unmindful of Mrs. Booth's guarantee agreement that allowed Bat Masonry a line of credit which, in essence, allowed Mr. Booth to keep Bat Masonry financially afloat and viable. It is interesting to note that the Court of Appeals of North Carolina rejected the notion that a guarantee of corporate debt for a non-marital asset itself creates a marital interest, *McLeod*, *supra*, at 915. I share that assessment and further find that this is another factor that weighs in favor of the wife in determining the amount of the award. This was clearly a monetary contribution to the well-being of the family. It allowed Mr. Booth to keep his business, his home, his other investments, and his, as well as the family's, lifestyle. While it is difficult to quantify, with exactitude, the worth of Mrs. Booth's contribution, it must be considered in determining the award.

*II. The contributions, monetary and nonmonetary, of each party to the well-being of the family.*

Even though each side attempted to paint the other as negatively as possible, the believable evidence demonstrates exaggeration from both parties. I have read the depositions of the Oldhams and reviewed the testimony of the other witnesses for Mrs. Booth and find that she made substantial nonmonetary contributions to the well-being of the family. This is amply supported by the testimony and shall weigh in her favor in granting an award. Once again, I cannot determine an exact monetary or percentage figure but will consider it in the overall scenario presented.

Mr. Booth's contributions were primarily monetary with some minor nonmonetary contributions as well. By his physical efforts and business acumen, the family flourished in that it had all the physical trappings, accoutrements and comforts that it desired. On the negative side, Mr. Booth was at times overbearing with his children and neglectful of Mrs. Booth by virtue of his predilection with other women. One cannot imagine a more callous affront to a wife than finding her husband engaged in sexual intercourse in the marital home with a retarded maid who had lived there for years and worked for the family. I will discuss this issue further re Section 20-107.3(E)(5).

*III. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties.*

There can be no serious question that Mr. Booth is responsible for the acquisition and care and maintenance of the vast majority of the marital property. Without his efforts, there would be no marital property as it exists in this case. He was the brain and the brawn behind the acquisition of the property and Mrs. Booth did little or nothing towards its acquisition. She did, as previously stated, greatly contribute to the care and maintenance of the marital property by her guarantee of debt payment for Bat Masonry. Further, she was primarily responsible for the care and maintenance of the family dwelling and family unit on a daily basis.

*IV. The duration of the marriage.*

This marriage was fairly amicable, with some infrequent discord, for approximately eighteen years. It certainly cannot be viewed as a marriage of short duration nor can it be viewed as one of lengthy duration. The length of this marriage is not such that it mitigates in favor of one spouse and against the other. For example, it would certainly be more noteworthy if the marriage lasted only two years or for thirty years. I believe in this case it is more important to consider what occurred during the eighteen years, keeping in mind the dictates of the statute.

*V. The ages and physical and mental condition of the parties.*

Mr. Booth is forty-nine years old with no apparent physical or mental infirmities. Mrs. Booth is forty-three years old with no apparent physical or mental infirmities save a recurring bronchial condition and attendant problems associated with her weight gain. Mr. Booth is fully capable of working and indeed must work. Mrs. Booth is relatively unskilled, and it will be extremely difficult for her to find gainful employment. It seems apparent that she possesses no investment skills as witnessed by her loss of $60,000.00 in the stock market and her

suit to recover the same. This evidence clearly conflicts with her testimony that she "invested" over the years on behalf of Bat Masonry. That assertion is not borne out by the evidence and is an example of Mrs. Booth's attempting to bootstrap her position. The believable evidence demonstrates that she acquired her monies and portfolio from Mr. Booth's providing her with money and advice regarding the same.

I have noted that Mrs. Booth has demonstrated a desire to punish or ruin Mr. Booth all throughout these proceedings. It was only after I ruled against Mrs. Booth on the fault issue that she attempted to criminally prose-cute Mr. Booth for the "rape" and "sodomy" of their maid. There also has been consistent nuance and innuendo from Mrs. Booth that she plans to contact the Internal Revenue Service and have them ruin Mr. Booth. Mrs. Booth stated that she eschewed profanity and did not use the same, but the recorded phone call from her to Mr. Booth contained a tirade of invective and epithet against Mr. Booth that would embarrass all save the most hardened user of profani-ty and scatology. Mrs. Booth explained this occurrence as a release recommended by her psychiatrist, an assertion ultimately shown to be untrue. In fact, Dr. Yoder's assess-ment of Mrs. Booth coincided with mine, to-wit, evasive-ness.

*VI. The circumstances and factors which contribu-ted to the dissolution of the marriage, specifically including any ground for divorce under the provisions of Section 20-91(1), (3) or (6) or Section 20-95.*

I would not have granted either party a divorce on the basis of desertion or constructive desertion on the evidence presented. There was insufficient corrobo-ration to sustain either position. The clear testimony was that Mr. Booth's licentious behavior preceded the separation of the parties and Mrs. Booth's adulterous conduct began after the separation. Even though Mrs. Booth is not entitled to spousal support as per the holding in *Rosenberg* v. *Rosenberg*, 210 Va. 44 (1969), and *Coe* v. *Coe*, 225 Va. 616 (1983), it mitigates in her favor that her own sexual dalliances began only after the mar-riage was destroyed and the parties were separated.

*VII. How and when specific items of such marital property were acquired.*

There was scant testimony concerning this issue and neither side seemed to attach much significance to it. As stated before, the vast majority of marital property was acquired due to the success of Mr. Booth in the business world. Mrs. Booth benefited both directly and indirectly therefrom. All property of the parties was marital with a few minor exceptions and Bat Masonry, as per my ruling.

*VIII. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities.*

Mr. Booth has incurred substantial debt in order to keep Bat Masonry viable, this apparently being necessary because of cyclical business reversals. Mrs. Booth no longer shares liability for these debts. The record is not totally clear as to which property serves as security for Mr. Booth's debt. Thus, since I will make an award to Mrs. Booth and Mr. Booth may satisfy that award, in whole or in part, by the transfer of property (subject to my approval), I do not believe it necessary to select each item of property and identify its debt status at this time. I do find that Mr. Booth's net worth to be approximately $1,600,000.00.

Mrs. Booth's main debt appears to be her legal fees. While there is no evidence in the file of the amount of her legal fees, Judge Sheffield avers that he expects their fee to be more than double the $38,000.00 expended by Mrs. Booth for her three previous attorneys. I do not believe I possess the authority to make a specific award of attorney's fees under the facts of this case. However, I recognize that the attorney's fees incurred by Mrs. Booth, or at least a portion of them, were necessarily incurred. This is a case of major proportions and complex issues and has taxed every resource possessed by me. Most of the time consumed in court was necessary in order to reveal the facts in such a convoluted case wherein we have no definite guidance as to what the law is in Virginia. Lastly, it is the duty of this court

to do equity and equity demands I take cognizance of the attorney's fees of both parties.

*IX. The present value of pension or retirement benefits, whether vested or nonvested.*

The only evidence of pension benefits indicates Mr. Booth possesses the same through Bat Masonry and it is worth approximately $6,000.00. I will not direct the payment of any portion of pension benefits as this is totally unnecessary in this case to ensure equity.

*X. The liquid or nonliquid character of all marital property.*

Once again, there was little evidence produced which went to this issue and understandably so. It would have been counterproductive, unduly expensive, and wasteful of time to present evidence of the liquidity of each item of marital property. I, of course, recognize that stocks, if not pledged or encumbered, are extremely liquid, as are bonds, certificates of deposit, etc. An item, such as real estate, while generally liquid, is much less so than the aforementioned items. The seven business ventures testified to by Mr. Sandy Frazier (Adventure Restaurant -- East Coast of North Carolina and Adventure Restaurant -- East Coast of Virginia) and Mr. Al Stroubant (Briarwood Properties, Amelon, North Cote, Little Giant and Briarwood Gardens) indicate these assets are losing money and their only utility is a tax write-off. On the evidence presented these corporations and partnerships add nothing to the ability of Mr. Booth to make an award to Mrs. Booth. Thus, I give little consideration to the testimony concerning these assets and find that there was practically no value gleaned from the same.

*XI. The tax consequences to each party.*

There was no testimony from any witness as to what the tax consequences would be to any party. I certainly cannot infer what they would be, and I am otherwise incapable of ascertaining what the tax consequences would be if certain properties were transferred.

*XII. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.*

One factor to be considered is who, by virtue of possession, title, or ownership of property and assets, can be expected to make an award. The clear answer here is Mr. Booth. I feel I must take note of the fact that Mrs. Booth took approximately $146,000.00 in cash (marital property) when she left the marital abode in August of 1982. Sixty thousand dollars of this sum was lost in the stock market as previously mentioned. Thirty-eight thousand dollars was expended as legal fees by Mrs. Booth for her three previous attorneys. With the balance and some increase due to interest, Mrs. Booth apparently supported herself and her minor son, Mark, until these funds were depleted; whereupon, she requested and received a sum for child support and temporary spousal support. Mrs. Booth never asked this court for any support until all of the funds were dissipated. However, the use of the $50,000.00 for her support and Mark's is viewed by me as beneficial to Mr. Booth as this relieved Mr. Booth of his obligation to support Mrs. Booth, temporarily, and Mark.

On the other hand, I view the $60,000.00 loss in the stock market as a waste of marital assets in that Mrs. Booth could have placed these funds in a non-speculative fund or account. As stated by me at one of the hearings, I refuse to value the lawsuit filed by Mrs. Booth against Merrill-Lynch.

Before I make the determination of the amount of the award to Mrs. Booth, some housekeeping, findings and rulings need be completed.

A. There are several pending motions. All motions are denied.

B. I considered the testimony of Dr. Fain Edwards in evaluating the worth of services of a spouse in domestic litigation. I deem it advisory and not conclusive.

C. Mrs. Booth will possess and own all of the jewelry which I find to be worth $10,230.00.

D. Mr. Booth will possess and own all of the antique cars which I find to be worth approximately $40,000.00.

E. Mr. Booth will possess and own all of the guns which I find to be worth approximately $20,000.00.

F. The parties are to divide equally the furniture in the dwelling formerly occupied by the parties. I find the worth of those furnishings to be $30,000.00. In the event the parties cannot agree upon an equal division or partition of the property, then the property shall be sold at public auction with the parties equally dividing the net proceeds. There was no testimony proffered concerning the status of the furnishings as separate or marital.

G. Mrs. Booth shall transfer her interest in the dwelling formerly occupied by the parties to Mr. Booth. She shall receive as a credit the sum of $95,000.00. Mr. Booth shall be solely responsible for any indebtedness remaining thereon. My reasons for doing this are that Mr. Booth has continuously occupied this dwelling since the couple first moved there, and he is in a better position to pay for and maintain the dwelling and both parties would suffer a loss if the property were sold.

H. I will attach a list of materials considered by me but not heretofore cited by me or either party.

### The Award

I reiterate and emphasize how difficult it is to value assets with precision and certainty. Many of the values testified to at our numerous hearings do not remain constant and fluctuate in an unpredictable manner. As arduous and leviathan as the task is, it is my sole duty to decide the issue. I have thoroughly reviewed the file, considered what I believe to be relevant and helpful cases from other jurisdictions, and heretofore discussed the facts as I perceive them, along with the mandates of Section 20-107.3.

Mr. Booth's net worth is in the area of $1,600,000.00. My award should be such that Mrs. Booth receives an equitable share of the marital assets and not such that Mr. Booth would be punished or cause his financial ruin. It is my judgment that Mrs. Booth shall receive an award of $565,000.00. This award may be made in a lump sum, or partially in a lump sum, with the rest in fixed payments over a period not to exceed five years. Unless the parties can agree to the method of payment or transfer of property, a conference will be necessary to accomplish the same. This award is deemed to encompass all costs and fees incurred by Mrs. Booth.

*List of materials and cases considered*

1. LaRue v. LaRue, 304 S.E.2d 312 (1983).
2. Watkins v. Watkins, 220 Va. 1051 (1980).
3. Peters v. Peters, 283 S.E.2d 454 (1981).
4. Wisconsin Statutes Annotated Section 767.255 (Property Division).
5. Baltimore Law Review, Volume 8, 1979, "Legislation Property Disposition Upon Divorce in Maryland: An Analysis of The New Statute."
6. New York Domestic Relations Law, McKinney's Code, Sections 234, 235 and 236.
7. Seminar material for "How to Value The Homemakers Contribution in Personal Injury and Matrimonial Cases" prepared by The New Jersey Institute for Continuing Legal Education (1984).