JEAN H. GODLEY v. FREDERICK D. GODLEY, JR.

No. 9126DC635

(Filed 18 May 1993)

1. **Divorce and Separation § 121 (NCI4th)— equitable distribution—stock as gift—competent evidence to support finding**

    The trial court in an equitable distribution action did not err in finding that defendant's father made gifts of stock in the family corporation to defendant during the marriage where both defendant and his father testified that the stock was a gift, and the father also testified about his brother's plan to divide the two family businesses between themselves so that each might give a separate business to their sons.

    **Am Jur 2d, Divorce and Separation § 884.**

    **Divorce: equitable distribution doctrine. 41 ALR4th 481.**

2. **Divorce and Separation § 123 (NCI4th)— equitable distribution—family business—no active appreciation of stock—competent supporting evidence**

    The trial court in an equitable distribution action did not err in finding that defendant husband's family business stock had no active appreciation during the marriage, since the court found that defendant was not a manager or other person directing or controlling any of the business operations of the company, and any changes in the value of defendant's interest in the company were not the result of any active effort on the part of defendant.

    **Am Jur 2d, Divorce and Separation § 891.**

    **Divorce: equitable distribution doctrine. 41 ALR4th 481.**

GODLEY v. GODLEY

[110 N.C. App. 99 (1993)]

**3. Divorce and Separation §§ 124, 145 (NCI4th) — equitable distribution — post-separation income — no marital property — distributional factors**

The trial court did not err in failing to find that post-separation rental income was marital property, but the court did commit reversible error in failing to find that the post-separation income was a distributional factor. N.C.G.S. § 50-20(c)(12).

**Am Jur 2d, Divorce and Separation § 880.**

**4. Evidence and Witnesses § 2398 (NCI4th) — equitable distribution — refusal to appoint appraisers — method of valuing property — no error**

The trial court in an equitable distribution action did not err in denying plaintiff's motion for the appointment of appraisers pursuant to N.C.G.S. § 8C-1, Rule 706.

**Am Jur 2d, Divorce and Separation §§ 937, 942.**

**5. Divorce and Separation § 121 (NCI4th) — equitable distribution — housing partnership options — gift from defendant's father — competent supporting evidence**

Evidence was sufficient to support the trial court's finding that housing partnership options were gifts from defendant's father and not bargained for consideration where defendant's father testified that he gave defendant the options because the housing developments were defendant's idea and a means of planning the father's estate, and there was no evidence which suggested that the father received consideration for the options.

**Am Jur 2d, Divorce and Separation § 884.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

**6. Divorce and Separation § 135 (NCI4th) — equitable distribution — value of housing partnership options — failure to find not error**

There was no merit to plaintiff's contention that the trial court erred in failing to find the value of housing partnership options, since plaintiff failed to carry the burden of presenting evidence from which the court could classify, value, and distribute the property.

**Am Jur 2d, Divorce and Separation §§ 937, 942.**

**7. Divorce and Separation § 119 (NCI4th)— equitable distribution—partner's capital account deficit—marital debt**

The trial court in an equitable distribution action did not err by finding that defendant's partner's capital account deficit in a realty partnership was a marital debt, by distributing it to defendant, and by giving him a dollar for dollar credit as if it were a debt, since plaintiff's own expert testified that, to the extent the partnership had to pay debts, defendant would be liable for his negative capital account, and since funds withdrawn from the account and creating the deficit were used during the marriage directly or indirectly for the benefit of the marriage unit.

**Am Jur 2d, Divorce and Separation §§ 879, 880.**

**8. Divorce and Separation §§ 127, 145 (NCI4th)— equitable distribution—commissions earned between separation and distribution order—separate property—consideration as distributional factor**

The trial court erred in holding that property commissions received between the date of separation and the date of trial were marital property, since, at the date of separation, defendant had a mere contractual right to receive an uncertain amount of commissions at some time in the future, if at all, and the right to receive the commissions therefore had not vested on the date of separation; furthermore, only those commissions for a sum certain which is ascertainable, realized between the date of separation and the date of the equitable distribution order, should be used as a distributional factor.

**Am Jur 2d, Divorce and Separation § 880.**

**9. Divorce and Separation § 165 (NCI4th)— equitable distribution—marital residence—husband ordered to convey to wife—no requirement as to conveyance free of present wife's interest**

The trial court in an equitable distribution action did not err in ordering defendant to convey to plaintiff his entire right, title, and interest in and to the marital residence without requiring him to convey the residence free of his current wife's marital interest or to compensate plaintiff for the cost of acquiring release of the marital interest from his current wife.

Am Jur 2d, Divorce and Separation § 870.

Divorce: equitable distribution doctrine. 41 ALR4th 481.

10. Divorce and Separation § 161 (NCI4th)— equitable distri-
bution—distributional factors clearly set out

There was no merit to defendant's contention that the
trial court in an equitable distribution action erred in relying
upon broad and vague references to distributional factors in
order to justify as equitable an unequal division of the marital
property, since the trial court clearly set out as distributional
factors plaintiff's status as homemaker during a 23-year mar-
riage which resulted in three children, plaintiff's poor health
and medical expenses and defendant's good health, and plain-
tiff's nonexistent separate estate and defendant's separate estate
in excess of $2,000,000; moreover, the factors considered by
the trial court were sufficient to support its award, notwith-
standing the judge's failure to consider some distributional
factors and his improper consideration of others.

Am Jur 2d, Divorce and Separation §§ 915, 917-919, 924,
930, 932.

11. Divorce and Separation § 144 (NCI4th)— equitable distri-
bution—plaintiff's medical impairment properly considered—
adult children residing with plaintiff—defendant's income prior
to distribution—improper factors

Evidence was sufficient to support the trial court's finding
that plaintiff was medically impaired, and the court properly
considered this factor in making distribution; however, the
court erred in considering plaintiff's taking in of the parties'
22-year-old son and 18-year-old daughter and erred in consider-
ing defendant's income from 1984 to 1988 instead of income
at the time of distribution.

Am Jur 2d, Divorce and Separation §§ 915, 917.

12. Divorce and Separation § 136 (NCI4th)— equitable distri-
bution—value of businesses—no negative value assigned by
court

There was no merit to defendant's contention that the
trial court erred in refusing to consider the negative value
of three companies when determining what award would be
equitable, since the shares of stock in the businesses, which

the court was valuing, did not have a negative value, as testified to by defendant's CPA.

**Am Jur 2d, Divorce and Separation § 937.**

**13. Divorce and Separation § 155 (NCI4th) — equitable distribution — post-separation expenses to preserve marital property — treated as distributional factor**

The trial court did not err in treating defendant's post-separation expenditures made to preserve marital property as distributional factors.

**Am Jur 2d, Divorce and Separation § 915.**

Appeal by plaintiff and defendant from order entered 31 December 1990 by Judge Robert P. Johnston, in Mecklenburg County District Court. Heard in the Court of Appeals 13 October 1992.

*Ronald Williams, P.A., by Ronald C. Williams, and Martin, Morton, Bryant, McPhail & Hodges, by Elizabeth T. Hodges and James H. Morton, for plaintiff-appellant.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., for defendant-appellee.*

JOHNSON, Judge.

On 5 February 1987, plaintiff, Jean H. Godley, filed a complaint for absolute divorce, alimony, child custody and support and equitable distribution. Defendant Frederick D. Godley, Jr. answered on 8 July 1987, asserting defenses and counterclaims. The parties were divorced on 17 July 1987. From 15 January 1990 through 19 November 1990 the issue of equitable distribution was heard. The trial court informed counsel of its final decision on 31 December 1990, and filed the judgment on 1 January 1991. Both parties filed timely notices of appeal.

Jean and Frederick Godley were married on 9 August 1963, separated on 2 February 1985, and divorced on 17 July 1987. The parties have three children, all adults; however, at the time of trial, Catherine, the 18 year old youngest child, was in her senior year of high school.

Ms. Godley is 47 years old. During the marriage she was primarily a homemaker and has not earned a significant income at any

relevant time. Mr. Godley is 48 years old and is self-employed, working primarily in businesses developed and/or run in conjunction with his father, Fred O. Godley and his brothers, Bob and Bill Godley.

Two years after the separation, plaintiff-appellant brought this action seeking equitable distribution. In its equitable distribution decree, the court awarded an unequal distribution in plaintiff's favor, giving her in excess of 90% of the parties' marital estate. The court found that the factors justifying an unequal distribution were the income, property and liabilities of the parties at the time the division was to become effective; the duration of the marriage and the age and physical and mental health of the parties; and other factors which the court found to be just and proper.

A more specific statement of facts follows:

## 1. GODLEY CONSTRUCTION CO., INC.

When GCCo (Godley Construction Co., Inc.) was incorporated on 1 July 1959, defendant's two older brothers, William and Robert, were working full time and defendant was still in high school. At that time, 720 shares were issued, with 149 to the father, F. O. Godley, [20.64%], 63 each to William and Robert and the remaining shares to third parties. No shares were issued to defendant. GCCo redeemed 30 of the father's shares on 15 March 1960. When the parties married on 9 August 1963, there were 532 shares outstanding, with defendant owning 50 shares and his father owning 119 shares. On 14 February 1964, GCCo redeemed the father's 119 shares and the corporation issued 8 shares to defendant. After 14 February 1964, the father owned no stock in GCCo. Thereafter, GCCo issued 314 shares to the three brothers on the following dates: defendant: 15 March 1965, 8 shares; 4 January 1967, 42 shares; 30 April 1968, 16 shares; 5 January 1976, 66 shares [total 132]. William & Robert each: 4 January 1967, 5 shares; 30 April 1968, 16 shares; 5 January 1975, 66 shares [total 87 each].

Defendant started working part-time for GCCo after school and in the summers while in high school and college. He graduated from high school in 1961. He was an active participant in GCCo as evidenced by the corporate tax returns, loan documents, and corporate minutes. The corporate minutes reflect the following: on 28 May 1966, defendant was elected assistant secretary and put in line to be promoted from the sales to expediter; (b) on

25 February 1967 defendant was given an employee bonus; (c) on 6 September 1967, GCCo decided to sell certain real estate and defendant signed the minutes as director; (d) on 18 May 1968 the salary of defendant and his two brothers was set at $250.00 per week plus bonus and GCCo decided to sell real estate; (e) on 18 November 1968 a profit sharing plan was adopted; (f) on 17 April 1969 defendant made a motion that GCCo become involved in precast concrete panel business and that GCCo form a partnership with Dixon Block; the motion passed unanimously with "enthusiastic" response; (g) on 18 December 1970, GCCo purchased all the outstanding stock of Dixon Block and moved it to N. Graham Street, and also the decision was made to construct and lease a building to B. F. Goodrich Co.; (h) on 27 January 1971 defendant signed a directors resolution accepting on behalf of GCCo the loan commitment terms from NCNB to finance construction of a building and to lease it to B. F. Goodrich Co.; (i) on 22 February 1971 decision made to negotiate an agreement to construct and lease a building to The Whirlpool Corp.; (j) on 19 May 1971 defendant, acting on behalf of GCCo, executed a consent for corporate name change; and (k) on 10 February 1973 defendant reported on the installation and operation of a computer presently in use in GCCo office and was elected secretary-treasurer.

When Robert left to go on his own in the mid-1970's and William left in the late 1970's, defendant remained with GCCo as its only shareholder-employee and as its officer and director.

Defendant attended the annual meetings and was re-elected officer and director in 1974, 1975, 1976, 1977, 1978, 1979, and 1980. There were no minutes produced for the years 1981-1985. Defendant was elected vice-president at the 29 December 1986 shareholders meeting. On 26 February 1976, defendant signed a loan application representing that he then was employed by GCCo at $30,000 per year. Defendant remained employed by GCCo through 1984.

## 2. WILKINSON BOULEVARD WAREHOUSES

These warehouses are admittedly marital property although titled in defendant's sole name. On the separation date the warehouses had a fair market value of $310,000, a debt of $77,239, and a net fair market value of $232,761. At the time of trial the warehouses had a net fair market value of $410,000. There is no evidence the $100,000 appreciation was other than "passive." The warehouses were distributed to defendant.

The marital estate had the warehouses under lease continuously from the separation date to the trial date. Defendant received all the post-separation rental income.

### 3. HOUSING PARTNERSHIPS

From 1978 to 1980 defendant, his father and Frank McCool entered into four HUD partnerships to build and rent low income subsidized housing for the elderly in Charlotte, Monroe, Clinton and Rocky Mount. Pursuant to the partnership agreement terms, defendant and his father paid in capital of $450 each and McCool paid in $100 in return for 45%, 45%, and 10% partnership interest, respectively. Financing was arranged through non-recourse HUD or loans. Each of the housing partnership agreements provides that defendant would be general manager to conduct the day to day affairs of the partnership and granted defendant an option to purchase his father's interest in each partnership for $10,000 per partnership at any time.

On 22 December 1980, the Charlotte partnership acquired McCool's 10% interest in it. After the separation, the McCool shares in the remaining three partnerships were acquired by the respective partnerships. At the time of trial, defendant owned 50% of each partnership.

CHARLOTTE HOUSING FOR THE ELDERLY PARTNERSHIP had $100,855 post-separation appreciation from negative $1,822, to positive $99,033. Defendant's appraiser valued this asset at zero, but the trial court valued it at a negative $1,822, subtracted $1,822 from his share of the marital estate and distributed it to defendant although it was generating $35,000-50,000 per year net cash flow and $25,000 per year appreciation.

ROCKY MOUNT HOUSING FOR THE ELDERLY PARTNERSHIP had post separation appreciation of $164,387 from a negative $70,744 to a positive $93,643 between separation and trial. Defendant's appraiser valued the marital estate's interest in this partnership at zero, but the trial court valued it at a negative $70,744, subtracted $70,744 from his share of the marital estate and distributed to him this partnership interest generating $50,000-60,000 per year net cash flow plus $40,000 per year appreciation.

MONROE HOUSING FOR THE ELDERLY PARTNERSHIP interest appreciated $196,861 between separation and trial, from $37,792 to $234,653. The marital estate's interest in this partnership was

valued at $37,792 and it was distributed to defendant at $37,792 although it was and is generating $70,000-85,000 per year net cash flow and $60,000 per year appreciation.

CLINTON HOUSING FOR THE ELDERLY PARTNERSHIP interest appreciated $51,369 between separation and trial from $27,827 to $79,196. The marital estate's interest was valued at $27,827 and distributed to defendant from $27,827 which is less than one year's "net cash flow" and appreciation.

### 4. HOUSING PARTNERSHIP OPTIONS

The trial court found that the five options were vested as of the date of separation although none had been exercised on the separation date.

The partnership agreements containing the options were entered into at the inception of each partnership and before the projects were built from 1978-1980. Upon completion, the four projects had a net fair market value of zero.

Plaintiff contended the defendant's options to purchase his father's interest in the five partnerships were bargained for consideration. The trial court found they were gifts.

### 5. GODLEY REALTY PARTNERSHIP

Defendant contended the marital estate owed Godley Realty Partnership $540,372 by virtue of the $540,372 partner's capital account deficit shown on the 1984 schedule K-1 prepared by the partnership. Defendant and his father were equal partners in Godley Realty Partnership which is admittedly marital property. The $540,372 capital account deficit was comprised of a $431,188 deficit at the beginning of the year, an ordinary loss of $43,098 (one half the $86,196 partnership tax loss), a charitable contribution of $160 (one half the partnership's $320 charitable contribution), and defendant's 1984 withdrawal of $65,926. After the separation, the partnership was incorporated.

### 6. CHARLESTON PROPERTY COMMISSIONS CONTRACT

Defendant stipulated that during the term of the marriage, he entered into a contract with Godley Auction to assist it in restructuring its finances in return for 20% of the net profits from a 3,350 acre tract of land it owned in Charleston, South Carolina, but was in danger of losing. In December of 1983, the financial

restructuring was completed. No commissions had come due on the separation date. At the time of trial, several hundred acres remained to be sold with profits expected. The trial court found that the commissions contract was marital property and that defendant had received commissions under the contract in excess of $2,000,000 between separation and trial. The court concluded that defendant's receipt of this $2,000,000 + was a distributional factor and not marital property and did not distribute any portion of it to plaintiff by way of direct distribution or credit to her or charge to him. All of it was left with defendant. However, the court concluded that plaintiff would be entitled to one-half of the disputed $400,000 commission earned by defendant between the date of separation and the date of trial. It found that commissions coming due after trial were marital property and ordered their distribution in kind as part of the marital estate.

### PLAINTIFF'S APPEAL

[1] On appeal, the appellant, Jean Godley, brings forth seven assignments of error. By her first assignment of error she argues that the trial court committed reversible error in finding that the defendant's father made gifts of GCCo stock to defendant during marriage. We disagree.

In an action for equitable distribution, the court must first classify property as either marital or separate. *Loeb v. Loeb*, 72 N.C. App. 205, 208-09, 324 S.E.2d 33, 37, *cert. denied*, 313 N.C. 508, 329 S.E.2d 393 (1985). Only marital property is subject to equitable distribution. *Id.* The court must then divide the property equally unless it determines that equal division is not equitable. *White v. White*, 312 N.C. 770, 776, 324 S.E.2d 829, 832 (1985).

It is well-settled law that the party claiming the property to be marital must meet the burden of showing by a preponderance of the evidence that the property was acquired by either spouse or both spouses during the marriage, before the date of separation, and is presently owned. North Carolina General Statutes § 50-20(b)(1) (1987); *Atkins v. Atkins*, 102 N.C. App. 199, 401 S.E.2d 784 (1991).

Once that burden is met, the burden shifts to the party claiming the property to be separate property. The party must prove by a preponderance of evidence that the property was acquired by bequest, descent or gift during the course of the marriage. North Carolina General Statutes § 50-20(b)(2); *Atkins*, 102 N.C. App.

at 206, 401 S.E.2d at 788. If both parties meet their requisite burdens, the property is adjudicated separate property and is not subject to equitable distribution. North Carolina General Statutes § 50-20(b)(1).

In the case *sub judice*, it is undisputed that the appellant met her burden of showing that the GCCo stock was acquired by plaintiff during the marriage and prior to separation. The issue then becomes whether the appellee adequately carried his burden of proving by a preponderance of the evidence that the shares of stock were a gift to appellee from his father, Fred O. Godley.

The party claiming a gift must show (1) the intent of the donor to give the gift so as to divest himself immediately of all right title and control therein, and (2) the delivery, actual or constructive, of the chose to the donee, with consequent loss by the donor of dominion over the property given. *Fesmire v. Bank*, 267 N.C. 589, 148 S.E.2d 589 (1966).

We first note that the findings of the trial court will not be disturbed on appeal if there is competent evidence to support the findings. *Nix v. Nix*, 80 N.C. App. 110, 341 S.E.2d 116 (1986). The evidence presented at trial supports the trial court's finding that the stock Fred O. Godley gave to his son was a gift. The defendant and his father testified that the stock was a gift. The father also testified about his brother's plan to divide the two family businesses between themselves so that each might give a separate business to their sons. Because competent evidence was presented to support the finding of a gift, the finding will not be disturbed on appeal.

[2] By her second assignment of error, appellant contends that the trial court committed reversible error in finding that the defendant's GCCo stock had no active appreciation during the marriage. We disagree.

Active appreciation is that which results from the contributions, monetary or otherwise, made by one or both spouses. It is then that, under the source of funds theory, the marital estate is entitled to a proportionate return of its investment in separate property. *Wade v. Wade*, 72 N.C. App. 372, 325 S.E.2d 260, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985).

Again, if there is any evidence to support the trial court's findings, they will not be disturbed on appeal. *Nix*, 80 N.C. App. at 110, 341 S.E.2d at 116. The trial court found that "[d]efendant

was not a manager or other person directing or controlling any of the business operations of Godley Construction Company." The court then concluded that "[c]hanges in value of Defendant's interest in Godley Construction Company . . . are not the result of any active effort on the part of Defendant[.]" Defendant testified at trial that he worked for Godley Construction Company "[i]n a very limited basis." This testimony provides support for the trial judge's finding.

Plaintiff seeks to bolster her contention that there was active appreciation by citing *Phillips v. Phillips*, 73 N.C. App. 68, 326 S.E.2d 57 (1985) and *McLeod v. McLeod*, 74 N.C. App. 144, 327 S.E.2d 910, *cert. denied*, 314 N.C. 331, 333 S.E.2d 488 (1985). Those cases are distinguishable from the case at bar.

In *Phillips*, the plaintiff-husband acquired a 98% controlling interest in a corporation prior to his marriage. During the marriage, plaintiff exercised total control over the financial and managerial affairs of the corporation. Plaintiff also siphoned off funds which were used to purchase other assets which also increased in value because of the active participation of plaintiff. The case was remanded, with instructions that the trial court attempt to determine the active appreciation of the corporation.

In *McLeod*, the plaintiff-husband inherited, during the marriage, corporate stock representing a minority interest in the corporation. Later, as president of the corporation, plaintiff caused the corporation to redeem all outstanding stock except those shares owned by him. Plaintiff became the sole owner of the corporation. This court held that the appreciation of the stock was active, resulting from the plaintiff-husband's business decision.

The case now before us is distinguishable on its facts. Mr. Godley did not have great control over the financial affairs of the company, nor did he take or initiate actions which resulted in the appreciation of the stock. No error.

[3] By her third assignment of error, the appellant argues that the trial court committed reversible error by failing to find that post-separation income from the Wilkinson Boulevard property was marital property, or in the alternative, in failing to find that it was a distributional factor to be charged dollar for dollar against the husband's distribution.

GODLEY v. GODLEY

[110 N.C. App. 99 (1993)]

We first note that marital property means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties. North Carolina General Statutes § 50-20(b)(1). Post-separation income derived from marital property does not fall within the definition of marital property as set out by the legislature. We find no basis upon which to hold that defendant's post-separation rental income is marital property. *See Chandler v. Chandler*, 108 N.C. App. 66, 422 S.E.2d 587 (1992) (rental income from marital property between date of separation and date of equitable distribution action may not be added to marital estate, but must be considered as a distributive factor under North Carolina General Statutes § 50-20(c)12; and where there has been no exchange, contribution or conversion of marital funds or assets since separation, the source of funds theory does not apply to convert post-separation income into a marital asset). No error.

Plaintiff-appellant further argues that the post-separation income generated from marital property should be considered as a distributional factor. We agree. The *Chandler* Court stated, "Where, as in this case, the post-separation income is not a result of either [party's] action, the income could be considered as any other distributional factor under Section 50-20(c)(12)." *Chandler*, 108 N.C. App. at 69, 422 S.E.2d at 590. Although the trial court made a specific finding of fact as to defendant's average monthly income which consisted of rent proceeds, dividends and interest, it is not clear that the post-separation income was treated as a distributional factor. On remand, the post-separation income of the Wilkinson Boulevard property should be treated as a distributive factor.

[4] Plaintiff next argues that the trial court committed reversible error by denying plaintiff's motion for the appointment of appraisers pursuant to North Carolina General Statutes § 8C-1, Rule 706 (1992). Rule 706, however, allows for the appointment of an appraiser if, in the discretion of the trial court, one is necessary. Absent an abuse of discretion, such ruling will not be disturbed on appeal. We find no abuse of discretion; therefore, this assignment of error is overruled.

Plaintiff argues further that the trial court erred in accepting an appraisal method which did not value the intangible assets and did not reasonably approximate the net worth of the partnership interest and by finding negative net fair market values with respect

to the Charlotte and Rocky Mount properties that were contrary to defendant's appraiser's evaluation and was unsupported by other evidence. This Court notes that this assignment attempts to raise the question of methodology used by the court when evaluating the housing partnerships. This assignment was not set out in the record on appeal. Assignment of Error 22, under which the previous argument was brought, speaks only of errors regarding the trial court's finding and conclusion as contrary to the evidence or not supported by competent evidence. Rule 10 of the North Carolina Rules of Appellate Procedure provides that "the scope of review on appeal is confined to consideration of those assignments of error set out in the record on appeal." The assignment of error as briefed does not correspond to the referenced assignment of error and thereby fails to comply with Rule 10. We nonetheless considered plaintiff's argument and found it meritless.

[3] Plaintiff also asserts that the trial court committed reversible error by not finding and concluding that post-separation cash revenues received by the housing partnerships were marital property or in the alternative, the defendant should be charged dollar for dollar post-separation appreciation received by him in distribution.

We reiterate that post-separation income is not marital property, and the law of North Carolina does not require that it be treated as such. The trial court, however, did err in failing to consider the post-separation appreciation as a distributional factor under North Carolina General Statutes § 50-20(c). We remand the case for treatment of the post-separation appreciation as a distributional factor.

[5] By her fourth assignment of error, the appellant argues that the trial court erred in finding that the housing partnership options were gifts to and not bargained for consideration, or if the options were gifts, the trial court erred in failing to find active or passive appreciation. More specifically, appellant argues that the defendant did not carry his burden of proving the options were voluntary transfers without any consideration. We disagree, noting that the evidence in the record supports the trial court's finding that defendant's housing options were gifts and therefore his separate property.

Defendant's father testified that the idea to develop the four housing projects was defendant's and that the father tried to discourage defendant from the undertaking; that eventually the defendant sold his father on the idea; that upon entering the part-

nership, defendant's father gave defendant the options because it was defendant's idea and a means of planning the father's estate. There was no evidence which suggested that the father received consideration for the options. We find the evidence presented sufficient to support the trial court's finding of fact and conclusion of law that the options were a gift.

[6] Plaintiff alternatively argues that even if the options were gifts, the trial court erred in failing to find the value of the options on the date of separation and on the date of trial.

When classifications of assets are disputed, the assets must be labeled marital or separate depending on the proof presented to the trial court of the nature of those assets. *Johnson v. Johnson*, 317 N.C. 437, 454, 346 S.E.2d 430, 440 (1986). Here, plaintiff did not meet her burden of proving the value of the property. Therefore, the party claiming the property to be marital, having failed to carry her burden of presenting evidence from which the court can classify, value and distribute property, cannot claim error when the trial court fails to classify the property as marital and distribute it. *Miller v. Miller*, 97 N.C. App. 77, 387 S.E.2d 181 (1990). Accordingly, the trial court did not err in failing to find the value of the options at the specified date. The *Miller* Court opined:

> Since the party claiming the property, here a debt, to be marital, has failed in his burden to present evidence from which the trial court can classify, value and distribute the property, that party cannot on appeal claim error when the trial court fails to classify the property as marital and distribute it. *See Beaty v. Beaty*, 167 Mich. App. 553, 423 N.W.2d 262, 264 (1988) ("if the burden is not met, the interest should not be considered an asset.") Furthermore, we will not remand the case for the taking of new evidence. The parties have had ample opportunity to present evidence and have failed to do so. The requirements that the trial court (1) classify and value all property of the parties, both separate and marital, (2) consider the separate property in making a distribution of the marital property, and (3) distribute the marital property, necessarily exist only when evidence is presented to the trial court which supports the claimed classification, valuation and distribution. Furthermore, remanding the matter for the taking of new evidence, in essence granting the party a second opportunity to present evidence, "would only protract the litigation and clog the trial courts

with issues which should have been disposed of at the initial hearing." (cites omitted).

*Miller*, 97 N.C. App. at 80, 387 S.E.2d at 184. No error.

[7] By her fifth assignment of error, plaintiff next argues that the trial court erred in finding that defendant's $540,372 partner's capital account deficit in Godley Realty Partnership was a marital debt and by distributing it to the husband and by granting him a dollar for dollar credit .as if it were a debt.

Plaintiff's own expert, Roy Dellinger, testified that to the extent that the partnership had to pay debts, Mr. Godley would be liable for his negative capital account of $540,372. The trial court also found that the funds withdrawn from the account and creating the deficit, were used during the marriage directly or indirectly for the benefit of the marriage unit. The finding of fact and conclusion of law were supported by the evidence. No error.

[8] By her sixth assignment of error, plaintiff argues that the trial court committed reversible error in failing to find that the Charleston property commissions received by defendant between the separation and trial dates were marital property. Plaintiff contends that "[t]he $2,000,000 + commissions received under the contract between the separation date and the trial date are as much marital property as the commissions coming due after the trial and it was error for the court to hold otherwise." We disagree, noting that by definition property must be acquired during the marriage and before separation to be classified as marital property subject to equitable distribution. We further hold that the trial court erred in finding that the commissions were marital property, vested before the date of separation.

Our decision finds support in *Cobb v. Cobb*, 107 N.C. App. 382, 420 S.E.2d 212 (1992), where this Court held that the trial court's failure to include the future value of timber on the Phelph's Farm as marital property was not error. In *Cobb*, the appellant argued that the future value of timber on land that is marital property becomes vested during marriage and is subject to equitable distribution in the same manner as deferred compensation which is classified as marital property if vested. North Carolina General Statutes § 50-20(b)(1). The *Cobb* Court stated, however, that the future value of the timber is more analogous to an option "which is not exercisable as of the date of separation and which may

GODLEY v. GODLEY

[110 N.C. App. 99 (1993)]

be lost as a result of events occurring thereafter and are, therefore not vested, should be treated as separate property of the spouse for whom they may, depending upon the circumstances, vest at some time in the future." *Cobb*, 107 N.C. App. at 385-86, 420 S.E.2d at 214. The Court further stated that the future value of the timber may never be realized if the trees were destroyed by fire or insects.

The case now before us is similar to *Cobb*, in that Mr. Godley, having met the requirements to receive 20% of the commissions earned by Godley Auction, has a mere contractual right to receive an uncertain amount of commissions at some indefinite time in the future, if at all. The dispositive factor is that the right to receive the commissions had not vested on the date of separation. *See Hall v. Hall*, 88 N.C. App. 297, 363 S.E.2d 189 (1987); *See also* North Carolina General Statutes § 50-20(b)(2) ("the expectation of nonvested pension, retirement, or other deferred compensation rights shall be considered separate property"). Defendant has not deferred anything of which he was entitled to receive on the date of separation, into the future. The future commissions, if any, were not acquired during the marriage; therefore, they are separate property. *See Edwards v. Edwards*, 110 N.C. App. 1, 428 S.E.2d 834 (1993) (plaintiff-wife argued that husband's bonuses based upon his performance the previous year were deferred compensation; this Court held that there was no evidence indicating that plaintiff's or defendant's right to receive a bonus was vested on the date of separation. "In fact, it appears from the evidence that a situation may arise where no employee will receive a bonus, for example, if CSC shows no profit."). Accordingly, we hold that defendant's contractual right to receive future profits, which may or may not be realized, was not vested at the time of separation and therefore is not marital property.

Plaintiff also argues that the trial court erred in not considering the future commissions as a distributional factor. We believe that only those commissions, for a sum certain which is ascertainable, realized between the date of separation and the date of the equitable distribution order, shall be used as a distributional factor. The trial court properly treated the commissions as such.

The trial court, however, erred in ordering the 50/50 distribution of possible future commissions after the entering of the equitable distribution order, as they were defendant's separate property not subject to equitable distribution and too speculative to be considered

as a distributional factor. The portion of the order granting a 50/50 division of future commissions after the date of the order is reversed.

[9] By her last assignment of error, plaintiff contends that the trial court erred in not finding that the defendant had remarried and in failing to order him to convey the residence free of the current wife's marital interest or to compensate plaintiff for the cost of acquiring release of the marital interest from his current wife. Defendant's current wife, Kathy Godley, is not a party to this suit. The trial court acted properly in ordering defendant to convey to plaintiff his entire right, title and interest in and to the property. No error.

## DEFENDANT'S APPEAL

[10] By his first assignment of error, defendant argues that "[i]t is not proper for a court in making an equitable distribution to loosely rely upon broad and vague references to distributional factors in order to justify as equitable a vastly unequal division of marital property. We find no merit in this assignment. In the equitable distribution judgment, the court specifically set out the distributional factors on which it relied to make an unequal distribution.

The court used as distributional factors (1) that three children resulted from the 23 year marriage during which plaintiff was a mother, housekeeper and wife. North Carolina General Statutes § 50-20(c)(3). Plaintiff had no earnings until 1987, and from 1987 through 1989 she earned between $621 and $1,929 per year and was earning $32 per week at the time of trial. Defendant had earned income between $60,462 and $2,038,101 per year between 1984 and 1988. North Carolina General Statutes § 50-20(c)(1).

The court also used as a distributional factor the deterioration of various organs and parts of plaintiff's body as a result of long term juvenile diabetes; that her health insurance is $350 per month and that prescriptions are $300 per month. The court found that defendant had no significant health problems and the evidence presented showed none. North Carolina General Statutes § 50-20(c)(3).

In addition, the trial court considered as a distributional factor that plaintiff had no separate estate and that defendant's separate estate was valued at $2,171,333 as of the date of trial. North Carolina General Statutes § 50-20(c)(1).

The trial court in its discretion assigns each distributional factor the particular weight appropriate for that factor in a given case, and an unequal distribution based on a single distributional factor if supported by competent evidence will not be disturbed on appeal absent an abuse of discretion. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). In the instant case, defendant has proven no abuse of discretion and we find none. We have reviewed the record and find that the distributional factors were clearly set out and were not "loosely [relied] upon" as suggested by defendant. We so hold notwithstanding the trial judge's failure to consider some distributional factors and his improper consideration of others.

[11] By his second assignment of error, defendant contends that the trial court erred in basing its judgment upon findings of fact and conclusions which were irrelevant, erroneous, contrary to the evidence and the law and/or lacked sufficient basis in the competent evidence before it.

First, defendant assigns error to finding of fact "F", stating that the evidence did not support the trial judge's finding that plaintiff is medically impaired. There was substantial testimony from Dr. Shultz from which the trial court could have made its finding as to plaintiff's health. Accordingly, we find no error.

Defendant further argues that the trial court's finding that plaintiff has voluntarily taken in their 22 year old son, David, was irrelevant to the equitable distribution proceeding. We agree and hold that this factor was improperly considered as a distributional factor. The trial judge also improperly considered the fact that the minor child, Catherine, was still residing at the marital residence at the time of trial. North Carolina General Statutes § 50-20(f) provides that the court shall provide for equitable distribution without regard to alimony or child support.

Defendant also contends that the trial court erred in considering his income from 1984 to 1988. Defendant is correct in stating that it is his income at the time of distribution that is relevant. North Carolina General Statute § 50-20(c)(1).

We have considered the remainder of defendant's second assignment of error and find it meritless.

In his third assignment of error, defendant charges that the trial court erred in finding and concluding that his possible future

earnings from the Charleston commissions contract were marital property. This assignment has been addressed in plaintiff's appeal.

[12]  Defendant next argues that the trial court erred in refusing to consider the negative value of Single-Vend, Inc., Lambda Corp., and Godley Travel, Ltd. when determining what award would be equitable. Defendant fails to realize, however, that the shares of stock in these businesses, which the court was valuing, did not have a negative value. Defendant's CPA, Donald Hubbard, and Robert Beck testified against defendant on this point. There is sufficient evidence upon which the trial court made its decision; therefore, the decision will not be disturbed on appeal. No error.

[13]  By his final assignment of error, defendant argues that the trial court erred in refusing to provide defendant with adjustive credits for his post-separation expenditures made to preserve marital property. The trial court treated some, not all, of defendant's post-separation expenditures as distributional factors. Defendant, citing *Miller*, 97 N.C. App. at 77, 387 S.E.2d at 181 and *Fox v. Fox*, 103 N.C. App. 13, 404 S.E.2d 354 (1991), concedes that there "is authority for such treatment." Accordingly, we find no error.

In summary, with the exception of the Charleston property commissions, we find no error in and therefore affirm that part of the trial court's judgment addressing the classification and valuation of property owned by the parties. The trial court's classification of the future commissions from the Charleston property as marital property, however, is reversible error which requires correction on remand. The future commissions are separate property, not subject to equitable distribution. Furthermore, on remand, only the commissions generated between the date of separation and the entering of the equitable distribution order should be considered as a distributional factor.

We further find that the trial court committed reversible error in failing to find that the post-separation income from the Wilkinson Boulevard property and the post-separation cash revenues from the housing partnerships were distributional factors.

We also hold the trial court improperly considered as distributional factors the support of the parties' adult and minor children and defendant's earned income from 1984 to 1988 instead of his income at the time of distribution.

We therefore vacate the part of the judgment addressing the distribution of the marital property and remand this case to the trial court for redetermination of what constitutes an equitable distribution of the marital property and entry of a new judgment consistent with this opinion and correcting the errors identified herein.

The decision of the trial court is affirmed in part, vacated in part and remanded.

Judges COZORT and LEWIS concur.