JERRY L. BASS, Plaintiff
v.
JOY V. BASS, Defendant.
No. COA08-1455
Court of Appeals of North Carolina
Filed October 6, 2009
This case not for publication
No brief filed on behalf of defendant-appellee.
Jess, Isenberg & Thompson, by Laura E. Thompson, for plaintiff-appellant.
ROBERT C. HUNTER, Judge
Plaintiff appeals from Equitable Distribution Order entered 2 November 2007 and Alimony Order entered 14 March 2008 by Judge Napoleon Barefoot, Jr. in Brunswick County District Court. Plaintiff also appeals the denial of his Rule 59 Motion for New Trial entered 10 June 2008 with regard to alimony and attorney fees. After careful review, with regard to the equitable distribution order, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion, including the taking of additional testimony from the parties on issues remanded herein. With regard to the alimony order, we affirm in part, reverse the award of attorney fees, and remand for further findings by the trial court as to reasonable attorney fees. We affirm the trial court's denial of plaintiff's motion for a new trial.

Background
Jerry Bass ("plaintiff") and Joy Bass ("defendant") were married on 10 December 1982 and separated on 3 October 2004. On 29 April 2005, plaintiff filed a complaint seeking divorce from bed and board and equitable distribution in the district court of Brunswick County, North Carolina. On 16 June 2005, defendant filed an answer and counterclaim seeking divorce from bed and board, post-separation support, alimony, attorney fees, and equitable distribution. On 20 May 2005, a Temporary Order of Interim Distribution was entered regarding possession of the parties' two homes, owned as marital property. On 11 May 2007, the court entered an interim distributive award ordering plaintiff to pay to defendant $6,500 on 1 May 2007, and $6,500 on 15 June 2007.
The trial court conducted hearings regarding equitable distribution on 13-14 June 2007, 11-12 July 2007, and 15 August 2007. On 1 November 2007, the court issued an Equitable Distribution Order, which was entered on 2 November 2007, requiring plaintiff to pay defendant a distributive award in the amount of $100,000. On 13 November 2007, plaintiff filed a Rule 59 motion for a new trial regarding equitable distribution, which was denied on 28 December 2007. On 14 March 2008, the court entered an Alimony Order requiring plaintiff to pay defendant $3,200 per month payable for eleven years, until remarriage or cohabitation of defendant, or death of either party, whichever occurs first. Plaintiff was also ordered to pay defendant's attorney fees. On 24 March 2008, plaintiff filed a Rule 59 Motion for New Trial regarding alimony and attorney fees, which was denied on 10 June 2008. Plaintiff filed notice of appeal on 13 June 2008.

Standard of Review
"The standard of review of the percentage division of marital property in equitable distribution cases is for an abuse of discretion." Squires v. Squires, 178 N.C. App. 251, 256, 631 S.E.2d 156, 159 (2006). "A trial court's decision on the amount of alimony to be awarded is [also] reviewed for an abuse of discretion." Fitzgerald v. Fitzgerald, 161 N.C. App. 414, 420, 588 S.E.2d 517, 522 (2003).
It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.
White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (citations omitted). Additionally, "[i]t is well established that a trial court's conclusions of law must be supported by its findings of fact." Robertson v. Robertson, 167 N.C. App. 567, 574, 605 S.E.2d 667, 671 (2004). "While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable de novo." Lee v. Lee, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004).

Equitable Distribution Order

I.
Plaintiff has been employed by Watson Electrical Construction Company, LLP ("Watson Electric") since 1966 and owned valuable stock in the company at the time of equitable distribution.[1] Plaintiff first argues that the trial court committed reversible error in finding that the increase in value of the Watson Electric stock, classified as marital property, between the date of separation and the date of trial was divisible property. The trial court evenly divided the stock value increase of $224,004.78 between the parties. Plaintiff alleges that the increase was due to his active efforts and was therefore not properly classified as divisible property.[2]
Equitable distribution follows a statutorily-prescribed formula. The trial court first classifies the property as marital or separate; next, it determines the marital property's net value; last, it distributes that property between the parties. Taylor v. Taylor, 92 N.C. App. 413, 417, 374 S.E.2d 644, 646 (1988).
Here, the trial court held that the stock value increase was divisible property. N.C. Gen. Stat. § 50-20(b)(4) states in pertinent part:
(4) "Divisible property" means all real and personal property as set forth below:
a. All appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution, except that appreciation or diminution in value which is the result of postseparation actions or activities of a spouse shall not be treated as divisible property.

b. All property, property rights, or any portion thereof received after the date of separation but before the date of distribution that was acquired as a result of the efforts of either spouse during the marriage and before the date of separation, including, but not limited to, commissions, bonuses, and contractual rights.
c. Passive income from marital property received after the date of separation, including, but not limited to, interest and dividends.
N.C. Gen. Stat. § 50-20(b)(4) (2007) (emphasis added). Therefore, according to the statute, any increase in value of the stock that is due to plaintiff's active efforts cannot be deemed divisible property, but any passive increase in value is properly classified as divisible property. Id.
Here, the total value of the Watson Electric stock at the date of separation was $49,504.40. The total value of the stock at the date of trial was $273,509.18. The trial court found as fact "[t]hat nothing separate and apart from the performance of Watson Electric as a whole, created the stock of Watson Electric to increase post separation." Accordingly, the court found that the $224,004.78 increase in the marital property was divisible property.
The case of Godley v. Godley, 110 N.C. App. 99, 429 S.E.2d 382 (1993), is informative on this issue. There, the plaintiff-wife claimed that the trial court committed reversible error in finding that the defendant-husband's stock, which he owned as separate property during the marriage, had no active appreciation during the marriage. Id. at 109, 429 S.E.2d at 388-89. Had the increase been the result of active efforts of one spouse during the marriage, despite the fact that the stock was the husband's separate property, the increase would have been marital property and subject to division. See id. The trial court deemed the increase to be passive because
"[d]efendant was not a manager or other person directing or controlling any of the business operations of Godley Construction Company." The court then concluded that "[c]hanges in value of Defendant's interest in Godley Construction Company . . . are not the result of any active effort on the part of Defendant[.]" Defendant testified at trial that he worked for Godley Construction Company "[i]n a very limited basis."
Id. at 109-10, 429 S.E.2d at 389. While the stock in Godley was the husband's separate property, not marital property as we have in the present case, the court's evaluation of what constitutes a passive versus an active increase in stock is instructive. The Court focused on the husband's role in the company. Id. The fact that his involvement with the company was limited, and that he did not have any control over its operations, led the Court to determine that there was sufficient evidence to find that the increase was passive. Id.
Conversely, plaintiff in the case sub judice testified to his executive position in Watson Electric after the company emerged from bankruptcy, and his active role in rehabilitating the company. Plaintiff asserts that as the company grew, the stock gained in value, and it was, in part, due to his active efforts. Plaintiff testified as follows:
Q: And tell me what have you done subsequent, the date of separation's 10/03/2004, what actions did the company take after 2004 to make the company grow?
A: Well, again, all the different managers, we hit and made the commitment to get the company back to where it was at and in the process of doing it we all worked, I worked 60/70 hours a week going out and rekindling old customers, getting our contractors back and . . . building our log and bidding the work and . . . making new customers and getting new people, getting new people in staff and the training done. I mean we were having to hire a lot of new people that we didn't know, so we generated a quick training system to get them into our system so they'd be functional, it was just a lot of work on the part of all the top management to get this in and make it work. Not only that you were constantly out looking after all your projects, trying to make sure all the cost controls were in tact and being monitored, I was continuously writing business plans to make that happen and seeing they were enacted.
Q: And, Mr. Bass, as far as in the management of the company, who's the top. . . person in the company?
A: It'd be CEO Craig Myers.
Q: And under the CEO tell me what the tier system is.
A: District vice-president.
Q: And how many district vice-presidents are there?
A: At that time there was only three.
Q: And remind me what level you are, I'm sorry?
A: I'm district vice-president.
. . . .
Q: And how many people do you have that work under you?
A: I have five construction divisions . . . that would be reporting directly to me is five division or branch managers, and within those five divisions I would say probably 350 people, approximately.
After reviewing the evidence, we agree with plaintiff and find that the evidence presented does not support the trial court's finding "[t]hat nothing separate and apart from the performance of Watson Electric as a whole, created the stock of Watson Electric to increase post separation." Because of plaintiff's high-level executive position in Watson Electric, a company with non-transferrable stock, and the dramatic turn around of the company between the date of separation and the date of trial, we find that at least a portion of the stock increase was a result of his active efforts. Thus, the trial court erred in classifying the entire increase as divisible property. N.C. Gen. Stat. § 50-20(b)(4). We must therefore remand this case to the trial court to make findings concerning plaintiff's active efforts and to distribute the $224,004.78 in accord with those findings. The trial may require further testimony from the parties in order to make these findings. II.
From 2005 to 2007 plaintiff received dividends from the Watson Electric stock in the amount of $9,337.44. The trial court found that "the dividends paid for this stock acquired during the marriage but paid post separation to the Plaintiff in the sum of $9[,]337.44 are passive income and divisible property as defined by N.C. GEN. STAT. § 50-20(b)(4)." The trial court then divided the dividends evenly between the parties.
Plaintiff argues that because the stock increased in value due in part to his active efforts, the dividends paid on the stock cannot be classified as divisible property. We agree. As stated supra, the trial court erred in finding that the entire increase in the stock value was completely passive where the evidence showed that plaintiff, as vice president of the company, significantly contributed to the company's revitalization after declaring bankruptcy. It follows that at least a portion of the dividends paid were due to plaintiff's active efforts. Thus, the trial court erred in classifying the dividends as entirely divisible property. We have remanded this case to the trial court to make findings regarding plaintiff's active efforts and to distribute the stock increase accordingly. We further order the trial court to apportion the dividends in the same manner as the stock increase.

III.
On 20 November 2003, prior to the date of separation, plaintiff entered into a "Supplemental Salary Continuation Agreement" with Watson Electric that contained an "assignability" clause, which plaintiff asserts precluded the trial court from distributing it via a Qualified Domestic Relations Order ("QDRO").[3] The relevant clause stated: "The benefits provided by this Agreement will not be subject to garnishment, attachment, or any other legal process by the creditors of Employee or of any person or persons designated as Beneficiaries of the Agreement."
Based upon the terms of the agreement and plaintiff's testimony, the trial court made the following finding of fact:
That on November 20, 2003, the Plaintiff entered into a salary continuation agreement which stated that the company (Watson Electric) and the Plaintiff agreed that the Plaintiff is currently and will perform valuable services for the company, Watson Electric, in the future. The Plaintiff separated from the Defendant eleven months after entering into the salary continuation agreement. The company wanted these valuable services to continue and aid in providing retirement and death benefits to the employee (Plaintiff) and his or her beneficiaries. That the Supplemental Salary Continuation agreement is a deferred compensation retirement benefit that accrues at a fixed annual rate of 6% before taxes per the stated agreement. The Plaintiff had in this deferred compensation plan an initial account balance of $109,664.00 on November 20, 2003 and the Plaintiff's designated retirement age was 62. This deferred compensation is restrictive in that if employee is terminated by the company with cause, he loses the entire balance credited to his account and also if he retires but then violates a non-competition clause . .. he loses said deferred compensation. This is not subject to garnishment or attachment. When the plaintiff would receive said payment, he shall, be paid over a 10-year period, for said amount in 120 equal, consecutive monthly installment payments. That pursuant to the agreement, the employee may elect to forego receiving the payment benefit until his actual retirement date. That pursuant to N.C. GEN. STAT. § 50-20.1 the court finds this salary continuation plan . . . is a deferred compensation plan which may be distributed by a Qualified Domestic Relations Order and which was a marital asset on the date of separation. That said plan had a fair market value on the date of separation of $115,695.52 which is the original contribution of $109,664 plus 12 months interest at 6% (or $6,579.84) minus one months interest of $548.32. That the marital portion of the plan would grow at 6% each year thereafter as long as the plan administrator allowed interest to accrue. That the Defendant is entitled to 50% of this marital asset by a Qualified Domestic Relations Order upon distribution by the Plan Administrator (to wit: Watson Electric).[4]
The trial court then ordered plaintiff to enter into a QDRO within thirty days of the entry of the equitable distribution order.
It is undisputed that the balance of the deferred compensation plan at the date of separation is marital property. N.C. Gen. Stat. § 50-20(b)(1) (2007) ("Marital property includes all vested and nonvested pension, retirement, and other deferred compensation rights . . . ."). With regard to distribution of a deferred compensation plan, N.C. Gen. Stat. § 50-20.1 (2007) states in pertinent part:
(a) The award of vested pension, retirement, or other deferred compensation benefits may be made payable:
. . . .
(3) By appropriate domestic relations order as a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits[.]
. . . .
(b) The award of nonvested pension, retirement, or other deferred compensation benefits may be made payable:
. . . .
(3) By appropriate domestic relations order as a prorated portion of the benefits made to the designated recipient at the time the party against whom the award is made actually begins to receive the benefits[.]
. . . .
(c) Notwithstanding the provisions of subsections (a) and (b) of this section, the court shall not require the administrator of the fund or plan involved to make any payments until the party against whom the award is made actually begins to receive the benefits unless the plan permits an earlier distribution.
N.C. Gen. Stat. § 20.1. Clearly, the statute permits the use of a QDRO to distribute a deferred compensation plan once the party entitled to the benefits begins to receive them. Plaintiff acknowledges the clear meaning of the statute and cites no authority to support his argument to the contrary.
We find that the language of the contract between plaintiff and his employer does not preclude the trial court from ordering plaintiff to enter into a QDRO, which makes the benefits payable over time to defendant as plaintiff receives the compensation. The trial court was not attempting to garnish the plan or order plaintiff to enter into a QDRO that would disburse the benefits to defendant prior to plaintiff's retirement. Defendant was entitled to a portion of the marital property, the $115,695.52 that existed in the account at the time of separation, and the trial court determined that 50% was equitable. We find no error in this portion of the equitable distribution order.

IV.
Next, plaintiff argues that the trial court erred by failing to ascertain the net value of the deferred compensation plan at the time of trial. The trial court found that the plan had a fair market value of $115,695.52 at the date of separation. Plaintiff alleges that the plan was valued at $130,611.58 at the time of trial, and because the trial court failed to make that finding, it had no authority to distribute the plan. This argument is without merit.
"For purposes of equitable distribution, marital property shall be valued as of the date of the separation of the parties .. . ." N.C. Gen. Stat. § 50-21(b) (2007). The value of the deferred compensation plan at the time of trial was irrelevant to the division of the marital property, which was properly valued as of the date of separation.
Plaintiff cites to the case of Albritton v. Albritton, 109 N.C. App. 36, 426 S.E.2d 80 (1993) to support his claim. However, in Albritton, this Court found that the trial court did not err in failing to find as fact the date of separation value of the defendant-husband's pension plan where no evidence was presented to the court regarding the value. Id. at 40-41, 426 S.E.2d at 83-84. The Court held, "[u]nder the circumstances, we feel that the trial court did the best it could with the information available. Therefore, the trial court's failure to put a specific value on defendant's pension plan was not error." Id. at 41, 426 S.E.2d at 84. Defendant's reliance on Albritton is misplaced since that case dealt with the trial court's inability to place a date of separation value on marital property, which is statutorily required, not the trial court's failure to value the property at the time of trial.
In sum, we find that the trial court properly valued the deferred compensation plan at the date of separation and was not required to find as fact the value of the plan at the time of trial since that information was irrelevant to the division of the marital asset.

V.
Additionally, with regard to the deferred compensation plan, plaintiff claims that the trial court erred in determining that defendant was entitled to one half of the 6% interest increase from the date of separation to the date of trial and one half of the 6% interest that accrues each year until the plan is divided by the administrator per the QDRO. Plaintiff argues that this increase in value of marital property is due to active efforts on his part because the interest will only accrue while he is employed with the company and is also subject to his compliance with a non-compete clause.[5] We agree.
N.C. Gen. Stat. § 50-20.1(d) states: "The award shall be based on the vested and nonvested accrued benefit, as provided by the [compensation] plan or fund, calculated as of the date of separation, and shall not include contributions, years of service, or compensation which may accrue after the date of separation." (Emphasis added). Accordingly, if the 6% interest qualifies as compensation that plaintiff continues to earn after separation, then defendant is not entitled to any portion of it.
As the trial court noted in finding of fact 41, the deferred compensation plan was to compensate plaintiff for past and future service to the company. If he is fired for cause or if he leaves the company and violates the non-compete clause, he will lose the balance of the plan. Furthermore, he will only earn the 6% increase while he is actively working for the company. Accordingly, we find that the plan's $115,695.52 balance at the time of separation was properly classified and distributed as marital property, but the 6% annual increase in value after the date of separation is not divisible and not subject to distribution because it represents compensation for plaintiff's active efforts and continued loyalty to Watson Electric. N.C. Gen. Stat. § 502-0(b)(4). Therefore, to the extent that the award to defendant was based on compensation earned by plaintiff in the form of interest after the date of separation and until the plan is divided by the administrator, the award is improper. This matter is hereby remanded to the trial court to amend the order consistent with this opinion.

VI.
Plaintiff next contends that the trial court erred in ordering him to pay a $100,000 distributive award when the presumption of in-kind distribution had not been rebutted. Plaintiff claims that an in-kind distribution of the BB&T 401(k), valued at $180,903.69 ($46,122.42 divisible and $134,781.27 marital), would have eliminated the distributive award had it been distributed per a QDRO.
Subject to the presumption of subsection (c) of this section that an equal division is equitable, it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable. This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind. In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.
N.C. Gen. Stat. § 50-20(e). "[I]n equitable distribution cases, if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination." Urciolo v. Urciolo, 166 N.C. App. 504, 507, 601 S.E.2d 905, 908 (2004).
The court found as fact, and mirrored in its conclusions of law, "[t]hat a complete division in kind of all marital property is not practical and a distributive award of $100,000 should be granted . . . to facilitate the distribution and is necessary to achieve equity between the parties." The court further found "[t]hat provisions in the stock re-purchase (buy-back) agreement limits the ability of the Court to make an award in-kind of the stock between the parties." The Watson Electric stock was valued at $49,504.32 as marital property and $224,004.86 as divisible property. Plaintiff maintained possession of the stock, and the court clearly stated that it could not make a division in-kind. While plaintiff argues that the distributive award was due to the division of the value of the 401(k), it is possible that the $100,000 distributive award is attributable to the court's inability to divide the stock in-kind. Due to the ambiguity, on remand we order the trial court to make additional findings of fact regarding the need for a distributive award. If the trial court based the distributive award on an inability to divide the BB&T 401K in-kind through a QDRO, a finding of fact should be made in that regard.

VII.
Next, plaintiff argues that the trial court failed to make findings that he has the ability to pay the $100,000 distributive award, which he is required to pay in four yearly installments of $25,000. We first note that due to our holdings supra, the distributive award in this case will likely be recalculated on remand.
This Court recently held in Pellom v. Pellom, ___ N.C. App. ___, ___, 669 S.E.2d 323, 329-30 (2008), that "if a party's ability to pay an award with liquid assets can be ascertained from the record, then the distributive award must be affirmed." In reviewing the record, we find that plaintiff had sufficient liquid assets to pay the distributive award, and therefore, the trial court's failure to make the appropriate findings does not constitute reversible error; however, the better policy is for the trial court to make findings regarding a party's ability to pay the distributive award with liquid assets, and therefore, on remand, we order the trial court to make such findings with regard to plaintiff.

VIII.
Plaintiff argues that the trial court erred in failing to find the net value of the marital property, as is required by N.C. Gen. Stat. § 50-20(c). Plaintiff relies on the holdings of Glaspy v. Glaspy, 143 N.C. App. 435, 545 S.E.2d 782 (2001) and Soares v. Soares, 86 N.C. App. 369, 357 S.E.2d 418 (1987). These cases do not support plaintiff's contention.
In Glaspy, this Court found reversible error where the trial court "failed to find the net value of the marital portion of the real property and the 1994 F-150 truck." 143 N.C. App. at 440, 545 S.E.2d at 786. Likewise, in Soares, this Court found reversible error where the trial court failed to place a value on the marital home. 86 N.C. App. at 371, 357 S.E.2d at 419. Here, unlike in Glaspy and Soares, the trial court merely did not include a total net value of marital and divisible property in its findings of facts. In finding of fact 57, the trial court details the net value of marital and divisible property at the time of trial. Additionally, throughout its findings, the trial court states the net value of the various properties at the date of separation. The fact that the court does not list a final total is not reversible error. Nevertheless, it is better practice for the trial court to list a total net value of the marital and divisible property and should include such a finding on remand.

IX.
Plaintiff further argues that the trial court failed to take into account the $13,000 plaintiff paid to defendant per the interim distribution order. "Any such orders entered shall be taken into consideration at trial and proper credit given." N.C. Gen. Stat. § 50-20(i1).
The trial court found as fact that an equal division was not equitable and ordered plaintiff to pay $13,000 in addition to the distributive award. Even though, as will be discussed infra, the trial court did not err in finding that an equal division was not equitable, we find that the trial court erred in failing to properly take into account the $13,000 interim award. If the trial court determined that defendant was entitled to an additional $13,000 due to the statutory factors set out in N.C. Gen. Stat. § 50-20(c), the trial court's finding of fact should reflect that determination. As it is presented in the Order, it is unclear whether the trial court took into account the $13,000 interim award as required by the statute. It is also unclear what the total percentage division of the property was. Obviously, the division was not equal, but the trial court did not make a finding regarding the percentage of the assets allocated to each party. On remand, we order the trial court to credit plaintiff the $13,000 he paid as an interim award to defendant and adjust the distributive award if necessary.

X.
Plaintiff claims that the trial court erred in finding that an unequal division of assets was equitable, granting defendant a larger share.
There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably.
N.C. Gen. Stat. § 50-20(c). The statute then goes on to list multiple factors to be taken into consideration when determining an unequal distribution, such as:
(1) The income, property, and liabilities of each party at the time the division of property is to become effective.
. . . .
(3) The duration of the marriage and the age and physical and mental health of both parties.
. . . .
(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property.
. . . .
(11a) Acts of either party to maintain, preserve, develop, or expand; or to waste, neglect, devalue or convert the marital property or divisible property, or both, during the period after separation of the parties and before the time of distribution.
. . . .
(12) Any other factor which the court finds to be just and proper.
Id.
"It is entirely within the trial court's discretion, absent some clear abuse, to determine whether or not to divide the marital estate equally or unequally." Leighow v. Leighow, 120 N.C. App. 619, 621-22, 463 S.E.2d 290, 291-92 (1995). When determining whether a trial court properly granted an unequal division of the marital property, review is limited to whether "the trial court's findings are supported by competent evidence and [whether] they are, in turn, sufficient to support the trial court's conclusion that an unequal distribution in [defendant's] favor was equitable." Britt v. Britt, 168 N.C. App. 198, 205, 606 S.E.2d 910, 914 (2005).
Here, the trial court made multiple findings of fact based on the distributional factors enumerated in N.C. Gen. Stat. § 502-0(c):
(a) The income, property and liabilities of each party at the time the division of the property is to become effective including that the Plaintiff has a substantial income as shown in Finding of Fact #15 and #18 at the date of trial and the Defendant has a small yearly income as shown in Finding of Fact #10 and #19, and the Defendant has very little financial ability to pay the marital debt.
(b) The duration of the marriage in that it is a 21 year marriage;[6]
(c) The inability of the Watson Electric stock to be divided or any to be distributed to the Defendant pursuant to restrictions in the Stock Agreement of Watson Electric Company;
(d) The substantial post-separation debt service payments by the Plaintiff after the date of separation; and
(e) The substantial separate estate of the Plaintiff as reflected in Finding of Fact #65 and the increase in value of the 401(k) plan post separation due to Plaintiff's separate contributions and Watson Electric matching funds in the amount of $29,897.33.
(f) The Plaintiff's payment of the property taxes on the marital property and insurance on the same.
"A single factor is sufficient, if supported by the evidence, to uphold an unequal distribution." Hendricks v. Hendricks, 96 N.C. App. 462, 464, 386 S.E.2d 84, 85 (1989). The trial court made findings concerning the parties' respective incomes, the length of the marriage, plaintiff's substantial separate retirement plan, and the inability to award defendant her share of the Watson Electric stock at the time of distribution. The court also weighed plaintiff's contributions to the marital estate post-separation, such as his payment of property taxes and debt services payments.
After a careful review of the record, we conclude that the trial court's findings are supported by the testimony at trial and the parties' financial records. Furthermore, we conclude that the findings are sufficient to support the trial court's conclusion that an unequal distribution in defendant's favor was equitable. However, we order the court to make a finding on remand as to the percentage allocated to each party.

Alimony Order

I.
Plaintiff claims that the trial court erred in entering its order of permanent alimony when it failed to make the required findings of fact, and the findings do not support the conclusions of law. "A trial court's decision on the amount of alimony to be awarded is reviewed for an abuse of discretion." Fitzgerald, 161 N.C. App. at 420, 588 S.E.2d at 522.

A. Plaintiff as Supporting Spouse and Defendant as Dependent

Spouse
Plaintiff argues that the trial court failed to make proper findings that defendant was a dependant spouse.
The court shall award alimony to the dependent spouse upon a finding that one spouse is a dependent spouse, that the other spouse is a supporting spouse, and that an award of alimony is equitable after considering all relevant factors, including those set out in subsection (b) of this section.
N.C. Gen. Stat. § 50-16.3A(a) (2007). Subsection (b) lists multiple considerations the trial court is to take into account. N.C. Gen. Stat. § 50-16.3A(b). "The court shall set forth the reasons for its award or denial of alimony and, if making an award, the reasons for its amount, duration, and manner of payment." N.C. Gen. Stat. § 50-16.3A(c). A dependent spouse is a "husband or wife, who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse." N.C. Gen. Stat. § 50-16.1A(2) (2007).
A spouse is actually substantially dependent if he or she is currently unable to meet his or her own maintenance and support. A spouse is substantially in need of maintenance if he or she will be unable to meet his or her needs in the future, even if he or she is currently meeting those needs.
Helms v. Helms, ___ N.C. App ___, ___, 661 S.E.2d 906, 909, disc. review denied, 670 S.E.2d 233 (2008) (citations and quotation marks omitted). "`[I]n other words, the court must determine whether one spouse would be unable to maintain his or her accustomed standard of living, established prior to separation, without financial contribution from the other.'" Id. (quoting Vadala v. Vadala, 145 N.C. App. 478, 481, 550 S.E.2d 536, 538 (2001)). "`[T]o properly find a spouse dependent the court need only find that the spouse's reasonable monthly expenses exceed her monthly income and that the party has no other means with which to meet those expenses.'" Id. at ___, 661 S.E.2d at 909-910 (quoting Beaman v. Beaman, 77 N.C. App. 717, 723, 336 S.E.2d 129, 132 (1985)).
Here, the trial court found that defendant's gross income was $12,000 in 2006, while plaintiff's gross income from salary alone was $271,121. Defendant stated in her affidavit that her net income was $1,100 per month, and her monthly expenses were approximately $3,535.79. During the parties' twenty-two years of marriage, plaintiff earned significantly more than defendant and paid all of the family expenses.
Plaintiff indicates that the court did not take into account the fact that the parties had financial difficulties throughout their marriage, which goes to defendant's standard of living. Plaintiff seems to suggest that defendant is not a dependant spouse because the couple had debt during the marriage. This argument is illogical.
In sum, the trial court made proper findings in accord with N.C. Gen. Stat. § 50-16.3A(b). These findings were supported by competent evidence in the record, and thus we find that the trial court did not err in concluding that defendant was a dependent spouse.

B. Consideration of Relevant Factors under N.C. Gen. Stat. § 501-6.3A(b).
Upon issuing an alimony award, the trial court is required to make findings that are "sufficiently specific" to show that all relevant factors have been considered under N.C. Gen. Stat. § 501-6.3A(b) (2007). Rhew v. Rhew, 138 N.C. App. 467, 470, 531 S.E.2d 471, 473 (2000). Plaintiff claims that the trial court failed to address multiple factors.
In fact, the trial court here made detailed findings regarding the statutory factors set out in N.C. Gen. Stat. § 50-163A(b), including, inter alia, the length of the marriage, the parties' respective incomes during the marriage and after separation, defendant's reasonable monthly shortfall, the parties' financial affidavits, and health insurance concerns. In reviewing the record, we find that the trial court made sufficient findings of fact to demonstrate its consideration of the statutory factors.

C. Amount, Duration, and Manner of Alimony Payments
The trial court is required to make findings in an alimony award regarding the "reasons for its amount, duration, and manner of payment." N.C. Gen. Stat. § 50-16.3A(c). Plaintiff claims that the trial court failed to do so here.
The trial court found as fact:
[B]ased on the foregoing, the court has determined and finds as fact that a term of alimony for 11 years beginning on January 1, 2008 in the amount of $3,200.00 per month is reasonable and equitable. A 11 year term will take the Plaintiff beyond retirement age and extend beyond the Defendant's retirement age. At her retirement the Defendant will be eligible to draw retirement and social security benefits. That an 11 year alimony duration is justified in this case.
The court also found that defendant's monthly shortfall was $3,200 based on her needs and earning capacity. The court concluded that plaintiff was capable of making said payments. Furthermore, if plaintiff retires or becomes disabled during the eleven years, he is "entitled to file a motion asserting that a substantial change in circumstances has occurred." Accordingly, we find that the trial court met the statutory mandate of making findings regarding amount, duration, and manner of payment and did not abuse its discretion in setting those terms.

II.
Plaintiff alleges that the trial court's finding that defendant's monthly shortfall was $3,200 a month was not supported by the evidence. Plaintiff claims that the shortfall was $2,435.79, not $3,200. Plaintiff points to defendant's affidavit, which stated that her net income was $1,100 per month. After subtracting defendant's net income from her $3,535.79 monthly expenses, plaintiff reaches the sum of $2,435.79.
"`In determining the needs of a dependent spouse, all of the circumstances of the parties should be taken into consideration including the property, earnings, earning capacity, condition and accustomed standard of living of the parties.'" Fink v. Fink, 120 N.C. App. 412, 418, 462 S.E.2d 844, 849 (1995) (quoting Peeler v. Peeler, 7 N.C. App. 456, 461, 172 S.E.2d 915, 918 (1970), overruled on other grounds by Stephenson v. Stephenson, 55 N.C. App. 250, 285 S.E.2d 281 (1981)), disc. review denied, 342 N.C. 654, 467 S.E.2d 710 (1996).
Here, the trial court found as fact that, inter alia: 1) defendant earned $12,000 gross income in 2006 and between $12,000 and $19,000 gross income per year during the past ten years; 2) defendant's monthly expenses are $3,535.79; and 3) "[t]hat the Defendant's reasonable monthly shortfall based upon her earning capacity is $3,200.00." The trial court was not strictly required to subtract defendant's net monthly income at the time of trial from her living expenses and order plaintiff to pay that sum per month. As stated in Fink, multiple considerations are to be taken into account, including the dependant spouse's earning capacity. Id. Furthermore, N.C. Gen. Stat. § 50-16.3A requires the court to consider "[t]he relative earnings and earning capacities of the spouses[,]" as well as the "relative needs of the spouses[.]" N.C. Gen. Stat. § 50-16.3A.
As the trial court noted, defendant's income fluctuated between $12,000 and $19,0000 during the previous ten years, and during 2006 she only earned $12,000 gross income. Here monthly expenses were approximately $3,535.79. Based on the trial court's findings of fact, we hold that it did not abuse its discretion in ordering plaintiff to pay $3,200 per month in alimony.

III.
Next, plaintiff contends that the trial court's findings regarding defendant's needs and expenses were not supported by the evidence.
Plaintiff cites to various transcript pages where the testimony of defendant conflicted with her affidavit, in which she claimed $3,535.79 per month in expenses; however, plaintiff fails to cite any authority to support his claim that the trial court was required to accept defendant's testimony rather than her affidavit where the testimony conflicted with the affidavit. Pursuant to N.C. R. App. P. 28(b)(6), we will not address this assignment of error.

IV.
Plaintiff argues that the trial court erred in awarding attorney fees to defendant because it failed to make sufficient findings that the fees were allowable and reasonable.
At any time that a dependent spouse would be entitled to alimony pursuant to G.S. 50-16.3A, or postseparation support pursuant to G.S. 50-16.2A, the court may, upon application of such spouse, enter an order for reasonable counsel fees for the benefit of such spouse, to be paid and secured by the supporting spouse in the same manner as alimony.
N.C. Gen. Stat. § 50-16.4 (2007).
"In order to award attorney fees in alimony cases the trial court must make findings of fact showing that fees are allowable and that the amount awarded is reasonable." Upchurch v. Upchurch, 34 N.C. App. 658, 665, 239 S.E.2d 701, 705 (1977).
An award of attorney fees . . . in an action for alimony must be supported by findings that establish that the plaintiff (1) is entitled to alimony pendente lite under G.S. 50-16.3, and (2) is unable to defray the expense of prosecuting the suit. . . .
Once the party's entitlement to attorney fees has been shown, the court then decides, in its discretion, on a reasonable fee. However, the order must contain findings as to the basis of the award, including the nature and scope of the legal services, the skill and time required, and the relationship between the fees customary in such a case and those requested.
Holder v. Holder, 87 N.C. App. 578, 583-84, 361 S.E.2d 891, 894 (1987) (citations omitted).
Here, the trial court found:
That the Defendant's attorney presented an affidavit for the payment of reasonable attorney fees for the benefit of the Defendant by whom he is employed for 36 hours on the alimony claim and as the dependent spouse the Defendant is entitled to the same in the amount of $3,600.00 as provided in N.C. GEN. STAT. § § 50-16.4.
The trial court did not find that defendant was unable to defray the costs of litigation, nor did the trial court make findings "as to the basis of the award, including the nature and scope of the legal services, the skill and time required, and the relationship between the fees customary in such a case and those requested." Id. Accordingly we vacate the award of attorney fees, and remand with instructions for the trial court to make sufficient findings of fact, which support any award of attorney fees the court deems reasonable and allowable by statute.

V.
Finally, plaintiff argues that the trial court erred in denying his Rule 59 motion for a new trial with regard to the alimony order.
Though we find that the trial court failed to make the required findings of fact with regard to attorney fees, we nevertheless find that the trial court did not err in denying plaintiff's motion for a new trial. Plaintiff's assignments of error pertaining to triable issues are without merit. We therefore uphold the trial court's determination that defendant was a dependent spouse entitled to $3,200 per month in alimony.

Conclusion
Based on the foregoing, with regard to the equitable distribution order, we affirm in part, reverse in part, and remand for further proceedings not inconsistent with this opinion, including the taking of additional testimony from the parties on issues remanded herein. With regard to the alimony order, we affirm in part, reverse the award of attorney fees, and remand for further findings by the trial court as to reasonable attorney fees. We affirm the trial court's denial of plaintiff's motion for a new trial.
Affirmed in part, reversed in part, and remanded.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).
NOTES
[1] Plaintiff testified that Watson Electric is not a publicly traded corporation and that the stock is non-transferrable.
[2] Plaintiff does not dispute that the stock itself is marital property; rather, he claims that the increase in value between the date of separation and the date of trial was through his active efforts and therefore should not be classified as divisible property.
[3] The agreement was executed on 19 February 2004, but the effective date was 20 November 2003.
[4] Plaintiff does not allege that the salary continuation agreement does not qualify as a deferred compensation plan, nor does he argue that the $115,695.52 does not constitute marital property.
[5] While the trial court did not classify the 6% increase as divisible property, it appears that the trial court considered the 6% to be a passive increase in marital property, which would qualify it as divisible property and subject to division. N.C. Gen. Stat. § 50-20(b)(4).
[6] The record indicates that the parties were married for twenty-two years.